CLAY COUNTY v. HOGAN *et al.**

(Division B.   Feb. 14, 1927.)

[111 So. 373.   No. 26273.]

1. TAXATION. *Cottonseed grown within state and owned by oil mills for manufacture held exempt from taxation for two years after being harvested; "farm products" (Laws 1918, chapter 183, section 1, subd. [i]).*

   Under Laws 1918, chapter 183, section 1, subd. (i), cottonseed grown within state and owned by oil mill for purpose of being manufactured into oils and hulls is exempt from taxation for two years after being harvested, in view of legislative history exempting farm products from taxation (Laws 1916, chapter 100).

2. TAXATION. *Cottonseed held not "manufactured product" preclud-ing exemption from taxation (Laws 1918, chapter 183, section 1, subd. [i]).*

    Cottonseed *held* not "manufactured product" of cotton so as to pre-clude its exemption from taxation under Laws 1918, chapter 183, section 1, subd. (i), for two years after being harvested.

---

*Corpus Juris-Cyc. References: Taxation, 37Cyc, p. 909, n. 50.

APPEAL from circuit court of Clay county.

HON. J. I. STURDIVANT, Judge.

Action by F. L. Hogan and another, a partnership us-ing the trade-name of West Point Oil Mill, against Clay County. Judgment for plaintiffs, and defendant ap-peals. Affirmed.

*Frank A. Critz,* for appellant.

The question is whether cotton seed in the possession of the West Point Oil Mill was exempt from taxation. Appellees claim that said cotton seed grown in the state of Mississippi during the year 1924 is exempt under sub-division (i) section 6878, Hemingway's Sup., chapter 183, Laws of 1918.

It is claimed by the appellees that the legislature by chapter 183, Laws of 1918 and chapter 100, Laws of 1916, extended the exemption as provided in chapter 241, Laws of 1912, so as to include all farm products in any one's hands for a period of two years, and that cotton seed being a farm product was, therefore, exempted.

Property produced and grown on the farm is grad-ually refined and changed in its form so that it is hard to decide exactly what the legislature intended the ex-emption to cover. Certainly, under the law where ex-emptions are decided strictly against the parties claim-ing exemption, it is very doubtful that the appellee is entitled to exemption in this case.

Tax exemptions are strictly construed, the rule of *ejusdem generis* applies. *Yazoo, etc., R. R. Co.* v. *Thomas,* 65 Miss. 553, 5 So. 108 (1988); *Greenville, etc.,*

*Co.* v. *Greenville,* 69 Miss. 86, 10 574 (1891).   Statutes creating exemptions from taxation must be strictly construed, the only exception being as to religious and educational institutions. *Adams County* v. *Catholic Diocese of Natchez,* 71 So. 17, 110 Miss. 890; *New Standard Club* v. *McRaven,* 71 So. 289, 111 Miss. 92 Ann. Cas. 1918E 294; *Currie-Finch Brick & Lbr. Co.* v. *Miller,* 80 So. 579, 123 Miss. 850; *Adams County* v. *Nat'l Box Co.,* 88 So. 168, 125 Miss. 598.

Under the strict construction of said subdivision (i), section 6878, Hemingway's 1921 Sup., appellee is not entitled to exemption.

*B. M. Walker, Jr.,* for appellees.

No question is raised in the brief of appellant as to cotton seed being farm products.   The supreme court of Alabama in reviewing a tax exemption case, held that it could not be said that ginning cotton or shucking and shelling corn converted the same into what is generally understood as manufactured articles and that cotton seed are agricultural products. *State* v. *Tuscaloosa Cotton Seed Oil Co.,* 95 So. 52.

With reference to the exemption, an examination of the acts of the legislature leading up to the present law will be pertinent.   See: Code of 1874, section 1662; Code of 1880, section 468; Code of 1892, section 3744; Code of 1906, section 4251; Laws of 1912, chapter 241; Laws of 1916, chapter 100; Hemingway's Code, section 6878; Laws of 1918, chapter 183; Subdivision (i), section 6878, Hemingway's Supplement.

The intent of the legislature can be determined only from the language of the statute, and that intent as expressed must be carried out.   The legislature evidently recognized that an exemption of agricultural products in the hands of the producer only would necessarily mean that the manufacturers would add in the tax and consequently pay less for the products, thereby, after all,

making the farmer bear the tax. In order to give the farmer the full benefit of the exemption, the legislature, by chapter 100, Laws of 1916, extended the exemption by striking out the words: "in the hands of the producer," and exempting "all farm products in this state for a period of two years after they are harvested."

The supreme court in *Board of Sup'rs of Harrison County* v. *Gulf Coast Military Academy*, 89 So. 617, had a somewhat similar statute under consideration. A further insight as to the intent of the legislature in adopting chapter 100, Laws of 1916, may be had from chapter 231, Laws of 1916, approved four days later. See, also, *Johnston, Revenue Agent*, v. *Reeves & Co.*, 72 So. 926. The supreme court in *James* v. *Elder*, 23 Miss. 134, had under consideration almost the same identical facts as are involved in this case. The Elder case was affirmed in *Newman* v. *Elam*, 26 Miss. 474.

Three points are to be considered in construing such statutes: The old law, the mischief and the remedy; and it is the duty of the court so to construe the act as to suppress the mischief and advance the remedy. 25 R. C. L., Statutes, 299; and 5 R. C. L., Supplement, Statutes, 299; *Dixon* v. *Doe*, 1 S. & M. 70.; *Grand Gulf Bank* v. *Archer*, 8 S. & M. 151.

The statute is perfectly clear and includes: "all farm products grown in this state for a period of two years after they are harvested." A history of the law from 1874 down to the present time, an investigation of the facts and conditions existing at the time of the adoption of the law, and the wording of the statute itself can lead to but one result.

Argued orally by *R. Creekmore*, for appellant, and *B. M. Walker, Jr.*, for appellees.

ANDERSON, J., delivered the opinion of the court.

Appellees, F. L. Hogan and B. M. Walker, a partnership using the trade-name of West Point Oil Mill, brought

this action in the circuit court of Clay county against appellant, Clay county, to recover the sum of nine hundred sixty-two dollars and six cents, taxes for 1925 paid to the tax collector of said county under compulsion and protest, and recovered judgment for the amount sued for. From this judgment appellant prosecutes this appeal.

The case was tried before the court sitting as judge and jury, upon agreed facts, which facts were embodied in a written agreement as follows (leaving out the formal parts and the names of the parties signed thereto):

"It is agreed by and between plaintiffs and defendant in the above-styled cause:

"That plaintiffs on the 30th day of January, 1926, paid to Dave Cottrell, sheriff and tax collector of Clay county, Miss., the sum of nine hundred sixty-two dollars and six cents for taxes assessed by the board of supervisors of Clay county, Miss., upon forty-seven thousand five hundred eleven dollars and eight cents of cottonseed, the property of plaintiffs. That said cottonseed were all grown in the state of Mississippi during the year 1924 and harvested during the months of September to December, 1924, and January, 1925, and that said forty-seven thousand five hundred eleven dollars and eight cents of cottonseed were owned by the plaintiffs and were all of the merchandise and stock owned by the plaintiffs on the 1st day of February, 1925, except two thousand four hundred eighty-eight dollars and ninety-two cents of cottonseed grown in the state of Alabama, and of merchandise and stock. That the total amount of merchandise and stock owned by plaintiffs on the 1st day of February, 1925, including said forty-seven thousand five hundred eleven dollars and eight cents of cottonseed grown in the state of Mississippi, and said two thousand four hundred eighty-eight dollars and ninety-two cents of cottonseed grown in the state of Alabama, and said merchandise and stock owned by plaintiffs on the 1st day of February, 1925, amounted to fifty thousand dollars. That said fifty thousand dollars of cottonseed,

merchandise, and stock was the maximum amount of cottonseed, merchandise, and stock owned by the plaintiffs during the year 1925. That plaintiffs owned no cottonseed during the year 1925 grown in the state of Alabama other than those included in said sum of two thousand four hundred eighty-eight dollars and ninety-two cents above referred to.

"That said assessment of the board of supervisors of Clay county, Miss., on said sum of forty-seven thousand five hundred eleven dollars and eight cents of cottonseed grown in the state of Mississippi for the year 1925, was as follows, to-wit: one hundred ninety dollars and four cents paid under county fund levy of four mills; one hundred ninety dollars and four cents paid under bridge · fund levy of four mills; twenty-three dollars and seventy-five cents paid under refunding bonds and interest and sinking fund levy of one-half mill; forty-seven dollars and fifty-one cents paid under county road bonds, interest and sinking fund levy of one mill; forty-seven dollars and fifty-one cents paid under county highway, interest and sinking fund levy of one mill; thirty-five dollars and sixty-two cents paid under general road fund levy of three-fourths mill; ninety-five dollars and two cents paid under agricultural high school levy of two mills; one hundred forty-two dollars and fifty-three cents paid under district No. 2 good roads levy of three mills; ninety-five dollars and two cents paid under district No. 2 road bonds, interest and sinking fund levy of two mills; ninety-five dollars and two cents paid under district No. 2 dirt road levy of two mills. That same appears in Minute Book 10, p. 234 of the minutes of said board. That said payment of nine hundred sixty-two dollars and six cents by plaintiffs to Dave Cottrell, sheriff and tax collector of Clay county, Miss., for taxes on said forty-seven thousand five hundred dollars and eight cents of cottonseed grown in the state of Mississippi was made by plaintiffs to said sheriff and tax collector under compulsion and for the sole purpose of avoiding the seizure

and sale of the property of said plaintiffs, assessment of penalties and payment of costs. That said payment of nine hundred sixty-two dollars and six cents to said Dave Cottrell, sheriff and tax collector, was made by plaintiffs under a written protest, a copy of which is attached to the declaration of plaintiffs in said cause and marked Exhibit A. thereto. That said payment of nine hundred sixty-two dollars and six cents was made by check No. 232 of the West Point Oil Mill, and said written protest was attached to said check. That said check was in the sum of one thousand three hundred forty-one dollars and eighty-six cents and included the sum of three hundred seventy-nine dollars and eighty cents paid to the sheriff and tax collector of Clay county, Miss., under state levies of eight mills, in addition to said sum of nine hundred sixty-two dollars and six cents for the 'evics heretofore set out. That the entire payment of one thousand three hundred forty-one dollars and eighty-six cents, including said sums of nine hundred sixty-two dollars and six cents and three hundred seventy-nine dollars and eighty cents was paid under said written protest attached as Exhibit A to the declaration of the plaintiffs in said cause.

"That the plaintiffs on the 1st day of March, 1926, filed their claim for the alleged indebtedness of nine hundred sixty-two dollars and six cents of the defendant to the plaintiffs for said taxes paid under protest, as aforesaid, with the board of supervisors of Clay county, Miss., for allowance and payment by said board according to law. That a copy of said claim as so filed, with exhibits thereto, is attached to the declaration of plaintiffs in said cause marked Exhibit D. That said claim was duly and legally presented to the board of supervisors of Clay county, Miss., was heard and considered by said board on the 4th day of March, 1926, and the board of supervisors of Clay county, Miss., by an order duly and legally adopted on the said date, rejected said claim and refused to allow said claim; that a copy of said

order as so passed by the board of supervisors of Clay
county, Miss., and as it appears in Minute Book 10, at
page 302 of the minutes of said board of supervisors of
Clay county, Miss., is attached to the declaration of plain-
tiff in said cause marked Exhibit E.  That the original
tax receipts issued by the sheriff of Clay county, Miss.,
to the plaintiffs for said payment of one thousand three
hundred forty-one dollars and eighty-six cents, includ-
ing said sums of nine hundred sixty-two dollars and six
cents and three hundred seventy-nine dollars and eighty-
cents, under written protest are attached as Exhibits B
and C to the declaration of plaintiffs in said cause.  That
plaintiffs are a partnership doing business in the city of
West Point, Clay county, Miss., under the name West
Point Oil Mill, and that said payment of nine hundred
sixty-two dollars and six cents to the sheriff and tax
collector of Clay county, Miss., was made by plaintiffs
as a partnership doing business in the city of West
Point, Clay county, Miss., under the name of West Point
Oil Mill, and that plaintiffs protested said assessment as
heretofore stated, and in accordance with said protest
the board of supervisors of Clay county, Miss., on the
9th day of December, 1925, passed the following order in
the matter of.the assessment of said cottonseed of plain-
tiffs, to-wit:

" 'In the Matter of Correction of the Assessment of
the West Point Oil Mill as to Cottonseed Assessment.

" 'The assessment made against the West Point Oil
Mill showing an assessment of fifty thousand dollars for
cottonseed on hand, and it appearing that said seed are
exempt under the law, it is hereby ordered that the as-
sessment against the West Point Cotton Oil Mill be
corrected, and the assessment as to the said cottonseed is
hereby canceled, all subject to the approval of the state
tax commission.'  Said order was duly entered on the
minutes of said meeting of said board in Minute Book
10 at page 247.  That on the 8th day of January, 1926,
the board of supervisors of Clay county, Miss., passed

the following order in the matter of the assessment of said cottonseed, to-wit:

" 'In the Matter of the Assessment against the West Point Oil Company of fifty thousand dollars Cottonseed.

" 'At the December meeting of the board of supervisors there was entered an order exempting the West Point Oil Company from the assessment of fifty thousand dollars on cottonseed on hand, subject to the approval of the state tax commission. Since the entering of said order, the state tax commission, on the advice of the attorney-general, has disapproved the allowing of the said oil company said exemption, and the assessment of said oil company of fifty thousand dollars of cottonseed on hand will stand just as it appears on the assessment roll of Clay county, Miss. It is ordered that the clerk of this board send a copy of this order to the state tax commission.'

"Said order was duly entered on the minutes of said meeting of said board in Minute Book 10, p. 266. It is further agreed that the declaration of plaintiffs, with all exhibits thereto, shall be taken and considered as in evidence in the trial of this cause."

The question for decision is whether, under section 1, subd. (i), chapter 183, Laws 1918 (Hemingway's Annotated Code, Supplement 1921, section 6878), cottonseed grown in this state, owned by an oil mill for the purpose of being manufactured into oils and hulls, is exempt from taxes for two years after being harvested.

The statute exempts from taxation all farm products grown in this state for a period of two years after they are harvested, and all brick and tile on yards, except a tax of one-fifth of one per cent. per pound on lint cotton levied by the board of commissioners of the Mississippi levee district.

Beginning with the Acts of 1874 and coming down to the Laws of 1916, chapter 100, quoting the various statutes, which are in the same language, "All farm products raised in this state *in the hands of the producers*"

145 Miss.—30.

(italics ours) were exempt from taxation. By chapter 100, Laws of 1916, the statute was amended so as to read:

"(i) All farm products grown in this state for a period of two years after they are harvested, and all brick and tile on the yards, except the tax of one-fifth of one cent per pound on lint cotton now levied by the board of commissioners of the Mississippi levee district."

The statute, so amended, has continued to be the law since. It will be observed from the legislation on this subject that for more than forty years there was exempt from taxation all farm products raised in this state while in the hands of the producer; that, beginning with chapter 100, Laws of 1916, and continuing down to the present time, the phrase, "in the hands of the producer," has been left out of the statute. We think this change in the statute significant. We are of opinion that the legislature, by the statute, intended to exempt from taxation all farm products grown in this state for a period of two years after they are harvested, whether they be in the hands of the producer, purchaser, or manufacturer, provided they be in an unmanufactured state.

Can cottonseed be said to be a manufactured product of cotton? We think not. It is true that the separation of the lint and the seed of cotton is a necessary step toward the manufacture of both the lint and the seed. Nevertheless, it is not a part of the process of either. The harvesting of cotton—the picking it out of the bolls —is also a step leading up to the manufacture of the cotton and the seed therefrom, but it cannot be said that it constitutes a part of the process of their manufacture. The linting of cottonseed and the shucking and shelling of corn, preparatory to their manufacture into cottonseed and feed, do not transform these articles into manufactured products. They are still raw materials. *State* v. *Tuscaloosa Oil Co.*, 208 Ala. 610, 95 So. 52.

*Affirmed.*