# Richmond.

CITY OF RICHMOND v. RICHMOND DAIRY COMPANY.

March 19, 1931.

Present, Prentis, C. J., and Campbell, Holt, Hudgins and Browning, JJ.

The opinion states the case.

*James E. Cannon,* for the plaintiff in error.

*Shewmake & Gary,* for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

This is an application by the Richmond Dairy Company, hereafter called the company, filed under section 414 of the Tax Code of Virginia (see Code 1930, p. 2131 *et seq.*), for

relief from an assessment of an additional city license tax as a merchant. The relief prayed for was granted and the applicant exonerated from paying an additional merchant's city license tax of $2,042.50.

It is said in the brief for the company: "The sole question involved in the case is whether the applicant should be taxed as a merchant under section 188 of the Tax Code of Virginia and sections 106 and 107 of chapter 10 of the Code of the city of Richmond, or under section 73 of the Tax Code of Virginia upon its capital, as to that part of its business which consists of the purchase, pasteurization and sale of milk and cream, and the production and sale of buttermilk."

In the original application it was claimed that the company should be taxed under section 73, as a manufacturer, but it now seems to be claimed that it should be taxed under the same section of the Tax Code as upon capital in business not otherwise taxed.

The facts of the case are thus stipulated: "Richmond Dairy Company, hereinafter called the applicant, a corporation organized and existing under the laws of the State of Virginia, with its principal office in the city of Richmond, Virginia, is and has for a number of years been engaged in the dairy business in the said city of Richmond. This business consists, and has for the past several years consisted, of the pasteurization and sale of milk and cream; the production and sale of buttermilk, cheese, condensed milk and milk powder and the purchase and sale of butter and other dairy products. In addition, the said company is now, and has been since the 25th day of March, 1930, engaged in the production and sale of ice cream.

"There has been a lack of uniformity in the State of Virginia with respect to the classification of dairies for purposes of taxation. In some of the localities, persons, firms and corporations engaged in the dairy business were taxed on the capital used and employed in business in accordance with the

provisions of section 73 of the Tax Code of Virginia. In the city of Richmond, Virginia, persons, firms and corporations engaged in the dairy business were classified and taxed as merchants in accordance with the provisions of section 188 of the Tax Code. Whereupon, during the month of January, 1930, the question as to the proper method of taxing persons, firms and corporations engaged in the dairy business was submitted to the Hon. C. H. Morrissett, State Tax Commissioner, for a ruling. This ruling is fully set forth in the following communication:

"COMMONWEALTH OF VIRGINIA,
"DEPARTMENT OF TAXATION.
"RICHMOND, April 26, 1930.

"Hon. J. Vaughan Gary,
    "Attorney at Law,
        "State Planters Bank Building,
            "Richmond, Virginia.

"My dear Mr. Gary:

"The Department of Taxation on several occasions has considered the proper method of taxing dairies. It was ascertained that the problem was not so simple as it appears on its face. It was ascertained also that there was no uniformity in the taxation of dairies in Virginia, but that the several commissioners of the revenue were following their own ideas on the subject.

"The dairy business involves numerous items. Raw milk, pasteurized milk, butter, cheese, cream, buttermilk, condensed milk, evaporated milk, chocolate milk, milk powder, ice cream, ice cream mixtures and skimmed milk are involved.

"Prior to this year the large dairies in the city of Richmond, which buy their milk from the producers, were taxed by the State as merchants. In some of the cities, however, dairies doing the same kind of business were taxed on capital and not as merchants.

"When the question of changing the classification of the

Richmond dairies from the mercantile classification to the capital classification was again submitted to me early in 1930, I proceeded to make a personal examination of the plant of the Richmond Dairy Company in order to ascertain for myself the exact manner in which the milk and the milk products were being handled. I was greatly surprised to note the extent of the operations necessary in these modern days to handle milk and milk products. I was particularly struck with the great amount of machinery necessary for the pasteurization of milk. As a matter of fact, I found that the plant of the Richmond Dairy Company was full of machinery.

"This view of the actual operations necessary to handle milk and milk products led me to the conclusion that a dairy doing business in the manner in which the Richmond Dairy Company does its business is not a merchant within the meaning of the State law imposing a State license tax on merchants, but that such a dairy is properly taxable on capital as to all of its business, except the goods, wares and merchandise which it purchases from others and sells in the same form in which purchased. As to the business last mentioned, the mercantile classification is, of course, proper.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"It is admitted on behalf of the applicant that it is a merchant as to that part of its business which consists of the purchase from others of butter and other dairy products and the subsequent sale thereof in the form purchased, without subjecting the same to pasteurization or other manufacturing processes while in its possession. It is admitted on behalf of the city of Richmond that the applicant is a manufacturer as to that part of its business which consists of the production of condensed milk, milk powder and cheese, and that the capital employed in such part of its business is taxable under section 73 of the Tax Code. The sole question involved, therefore, is whether the said applicant should be taxed under section 188 of the Tax Code as a merchant or under section 73

of the Tax Code upon its capital as to that part of its business which consists in the purchase, pasteurization and sale of milk and cream, and the production and sale of buttermilk.

"Pasteurization is a process of heating milk or cream to a temperature of 145 degrees Farenheit and holding it at that temperature for thirty minutes and then cooling it rapidly for the purpose of destroying pathogenic organisms, thereby protecting the health of the consumer. In the process of pasteurization, milk is brought in large containers into the plant of the applicant in the city of Richmond from dairy farms located in the territory surrounding the city. It is poured into huge vats from which it is carried through elaborate machinery to pasteurization tanks. In the passage through the said machinery the temperature of the milk is quickly raised to 145 degrees Farenheit and the said milk is held at this temperature for a period of thirty minutes in the pasteurization tanks, thence it is passed through other machinery by which the temperature is rapidly lowered. It is then put into sterilized bottles, capped and put into refrigerators pending sale and delivery to the consumer. All of the machinery is operated automatically and neither the milk nor the bottles are handled by human hands from the time they enter the machine until the pasteurized milk is placed in the bottle and the bottle is capped.

"The buttermilk produced is known as culture buttermilk. It is made from milk from which the cream has been separated. Into this milk a culture is inserted as a starter. The product is then held at a ripening temperature until it has reached the proper stage of coagulation and acidity. It is then bottled and sold.

"The pasteurization and sale of milk and other dairy products in the city of Richmond is under the regulation of the board of health of the said city and a copy of the rules and regulations establishing grades for milk and governing the pasteurization, handling and bottling of milk and the steriliza-

tion of milk containers, marked 'Exhibit A,' is hereto attached and made a part of this stipulation.

"The company delivers its milk and other dairy products directly to the consumer by means of horse-drawn vehicles and trucks. The consumers to whom the products are delivered are regular customers of the company and the driver of the vehicle, who is the agent of the company in delivering the milk, covers a definite territory or route once or twice daily. In most cases the driver has standing orders to deliver a specified amount of milk each day. In other cases the amount is specified at the time of delivery. The driver also collects for the milk delivered. Some customers purchase tickets in advance which are subsequently used in payment for the milk; some customers pay in advance; some pay at the time of delivery; some pay by the week.

"A balance sheet showing the assets and liabilities of the applicant as of December 31, 1929, marked 'Exhibit B,' is hereto attached and made a part of this stipulation.

"Pursuant to the ruling of the State Tax Commissioner, heretofore referred to, the applicant filed its tax returns for the year 1930, listing as a merchant purchases amounting to $243,000.00, which constituted the purchase price of its butter and all of its other goods, wares and merchandise which is purchased from others during the calendar year 1929, and sold or offered for sale in the same form in which it was purchased without being subjected to pasteurization or any other processes. The said report was accepted by the commissioner of the revenue of the city of Richmond and a State merchants' license tax, amounting to $359.00, was assessed thereon and was paid by the applicant in due course. A city merchants' license tax, amounting to $622.50, was assessed thereon by the city of Richmond and was paid by the said applicant.

"Subsequently the applicant was advised by the city license inspector, by letter, dated March 26, 1930, that the city merchants' license which had been assessed and paid for the year

1930 was not satisfactory and the applicant was requested to file a return showing the total purchases made by it during the year 1929. The applicant, through its attorneys, advised the city license inspector that the returns theretofore filed had been made out in accordance with the advice of counsel; that the Hon. C. H. Morrisett, State Tax Commissioner, had been consulted relative thereto and that the return conformed to his interpretation of the law and that the applicant did not feel that it was required to file an additional return. Whereupon, on April 4, 1930, the city license inspector assessed an additional license tax against the applicant amounting to $2,042.50. The said additional tax was arrived at by using the return filed by the applicant in 1929 as the basis for the 1930 assessment. In 1929, the applicant reported purchases made during the year 1928, amounting to $1,899,994.00. Using this figure as a basis for 1930, the city of Richmond determined a tax thereon of $2,665.00, deducted therefrom the sum of $622.50, previously paid by the applicant, and presented the applicant with a bill for the difference, amounting to $2,042.50, from which assessment the applicant now seeks relief.

"In addition to the State and city merchants' license taxes hereinbefore referred to, the applicant has been assessed with and will, at the proper time, pay to the city of Richmond for the year 1930, taxes upon its land, plant, machinery and equipment amounting approximately to $6,550.00, and the applicant has reported to the State of Virginia for taxation for the year 1930, the capital used in its manufacturing business amounting to $213,928.28, upon which a tax amounting to $1,604.46 will be assessed and paid. In addition thereto, the applicant has also reported for State taxation for 1930 its net income as required by law.

"The applicant offered to prove by J. Hopkins Hall, Commissioner of Labor for the State of Virginia, that the department of labor classified said applicant as a manufacturer, but,

on objection by the defendant, the court rejected such testimony as irrelevant. It is further agreed that any ordinances of the city of Richmond pertinent to the question at issue may be read to the court with like force and effect as if such ordinances had been regularly pleaded and proven."

It appears then that in the application, as originally presented, the claim was that the company should be classified and taxed as a manufacturer as to that part of its business which relates to its purchase, handling and sale of pasteurized milk and cream, and the production and sale of buttermilk.

There is an ordinance of the city of Richmond requiring the pasteurization of milk and cream which is sold in the city. It was at first conceded that the company is a merchant as to that part of its business which relates to the purchase from others of butter and other dairy products and the sale thereof in the precise form in which they were purchased, and it is admitted that as to that part of its business which consists of the production and sale of condensed milk, milk powder and cheese, the applicant is a manufacturer. It is agreed for the city that this leaves as the sole issue to be determined, whether the company should be taxed as a merchant under City Code, section 106, or only under section 73 of the Tax Code upon its capital (segregated for taxation by the State), as to that part of its business which consists of the purchase, pasteurization and sale of milk and cream and the production and sale of buttermilk. So the parties agree as to the issue here.

It is shown that pasteurization is a process of heating milk and cream to a temperature of 145 degrees Farenheit and holding it at that temperature for thirty minutes, and then cooling it rapidly, for the purpose of destroying pathogenic organisms. In the process milk is brought into the plant of the company, poured into vats, from which it is carried by machinery to pasteurization tanks, from which it is passed by other machinery by which the temperature is rapidly lowered, and it is then bottled, capped and put into refrigerators pending sale

and delivery to consumers. All work is done by machinery, and neither the milk nor the bottles are handled by human hands from the time the milk enters the machine until the time the bottle is capped. The buttermilk produced is known as culture buttermilk, and is made from milk from which the cream has been separated. Into this milk a culture is inserted, and it is then held at a ripening temperature until it has reached the proper stage of coagulation and acidity, when it is bottled. The company delivers its milk and other dairy products directly to its customers, by means of horse-drawn vehicles and trucks. The drivers of the vehicles cover definite routes once or twice daily, and in most cases there are standing orders for specific quantities of milk and cream each day, for which the drivers usually collect.

■ As has been stated, in the original application it was contended that the company should be classed as a manufacturer as to that part of its business, whereas later on and now it seems to be contended that while perhaps it is not a manufacturer as to such pasteurized cream and milk and buttermilk, still in that event it should be taxed, not as a merchant, but only subjected to a State tax under section 73 upon its capital, as capital not otherwise taxed.

According due respect, as we do, to the opinion of the State Tax Commissioner, we find ourselves in disagreement with him, and in this, as we are able to comprehend the question, we are supported by reason, by custom and by ample authority.

In *H. M. Rowe Co.* v. *Beck,* 149 Md. 251, 131 Atl. 509, it is said that the term "manufacture" means the process of converting some material into different form, adapted to uses to which, in its original form, it could not be so readily applied.

In *Commonwealth* v. *Sunbeam Water Co.,* 284 Pa. 180, 130 Atl. 405, the term "manufacture" in an act exempting manufacturing corporations from payment of a capital stock tax, was said to be the fabrication or composition of new articles, of which the imported material constitutes an ingre-

dient or part. The court held that a company which produced distilled water by subjecting it to heat, converting it into steam and recondensing it into water, and using additional refinements in cleansing it of impurities, was not a manufacturer under that statute.

In *Commonwealth* v. *Lowry-Rodgers Co.,* 279 Pa. 361, 123 Atl. 855, it was held that the roasting and grinding of coffee did not constitute manufacture, the court saying that it had no hesitancy in holding that manufacturing does not cover the case of merely cleaning and effecting a chemical change in a natural product, however skilful the process and its result may be.

In *People, ex rel. Union Pacific Tea Co.* v. *Roberts,* 145 N. Y. 375, 40 N. E. 7, 8, it appeared that the company claimed to be a manufacturer. It was shown that it bought tea and coffee in large quantities, mixed the tea, and roasted, ground and blended the coffee, and put them up in packages for sale. The court said: "We think it very clear that the handling of tea and coffee in the manner indicated was not manufacture in any legal sense."

In *Clay County* v. *Hogan,* 145 Miss. 857, 111 So. 373, it appeared that ginning machinery is necessary to separate the seed from the lint, and it was held, under a tax exempting statute, that cotton seed is not a "manufactured product" of cotton.

In *Gray* v. *R. J. Reynolds Tobacco Co.,* 200 Ky. 47, 252 S. W. 134, it was held that the stemming of tobacco and getting it into shape for manufacture do not change its character for purposes of local taxation into that of a manufactured article.

The process of compressing cotton involves not only compressing but rebinding and recovering with new bagging, so as to change the form, size and condition of the bales and make them suitable for convenient transportation. This it was held did not constitute the operation of a manufacturing

plant, in *City of Memphis* v. *St. L. & S. F. R. Co.* (C. C. A.), 183 Fed. 529, 539. Sanford, J., in that case said: "In view of these authorities, we are of opinion that, as a compress plant does not in any way transform the cotton into a new or different article having any distinctive name, character or use, but merely adapts it for more convenient transportation, after which the cotton is used in exactly the same manner as before it was compressed and for exactly the same uses and purposes, it cannot be properly said that a compress is a manufacturing plant."

*Hartranft* v. *Wiegmann*, 121 U. S. 615, 7 S. Ct. 1240, 30 L. Ed. 1012, construes the tariff statute. It is held, as to shells (such as sea-shells) cleaned, ground and polished for marketing, that the mere application of labor to an article, either by hand or machinery, does not transform it into a manufactured article, unless the application of such labor effects some change in the character of the article, converting it into a new and different article, having a distinctive name, character or use.

*Anheuser-Busch Brewing Asso.* v. *United States*, 207 U. S. 556, 28 S. Ct. 204, 206, 52 L. Ed. 337, involved a claim for refund on corks imported from Spain and used for bottling beer for export, under an act of Congress providing that where duty had been paid on imported materials used in the ·manufacture of articles made or produced in the United States, there should be allowed, on the exportation of such articles, a drawback equal to the duties paid on the materials used, less one per centum of such duties. The claimant there, in order to put the imported corks into proper condition for stopping beer bottles, put them into a machine or air fan, and all the dust, meal, bugs and worms were removed therefrom. Then the corks were thoroughly cleansed by washing and steaming, removing the tannin and germs and making the corks soft and elastic, and then they were exposed to a blast of air in another machine until they were absolutely dry. Following this they

were put into a bath of glycerine and alcohol and again dried. This process closed up all the seams, holes and crevices and gave the corks a coating which prevented them from imparting a cork taste to the beer. This steaming of the corks destroyed all germs in them that would damage or spoil the beer if they were not so treated. The process took from one to three days. In deciding against the claimant the court, referring to the word "manufacture," said this: "The words of the statute are indeed so familiar in use and meaning that they are confused by attempts at definition. Their first sense as used is fabrication or composition—a new article is produced, of which the imported material constitutes an ingredient or part. When we go further than this in explanation, we are involved in refinements and impracticable niceties. Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation. But something more is necessary, as set forth in *Hartranft* v. *Wiegmann,* 121 U. S. 609, 7 S. Ct. 1240, 30 L. Ed. 1012. There must be transformation; a new and different article must emerge, 'having a distinctive name, character or use.' This cannot be said of the corks in question. A cork put through the claimant's process is still a cork." *Am. Fruit Growers, Inc.* v. *Brogdex Co.,* U. S. 51 S. Ct. 328, 75 L. Ed., decided March 2, 1931.

After the pasteurization process, there is no difference in the characteristic form, appearance, taste and use of milk and cream. It remains milk and cream.

The pasteurizing of milk, however, has been more than once adjudged not to be a manufacturing process.

In *Meen* v. *Pioneer Pasteurizing Co.,* 90 Minn. 501, 97 N. W. 140, 141, the company was authorized to engage in the business of "buying, manufacturing and dealing in milk, cream, butter, cheese and other dairy products, and pasteurizing and treating said milk, and packing, storing, handling and selling such products when so pasteurized and treated," and it

was held that it was not exclusively a manufacturing or mechanical corporation so as to exempt its stockholders from liability under a provision of the State Constitution.

*People* v. *Stevens,* 178 App. Div. 306, 165 N. Y. Supp. 39, was a prosecution under a statute prohibiting the operation of a factory on Sunday, and it was held that the pasteurization and bottling of milk was not manufacturing within the meaning of the statute.

The latest case to which our attention has been called is *People, ex rel. Empire State Dairy Co.* v. *Sohmer,* 218 N. Y. 199, 112 N. E. 755, L. R. A. 1917A, 48, note. There is a statute in New York which exempts manufacturers from the payment of a franchise tax, and the precise question was whether pasteurizing milk was a manufacturing process so as to exempt the dairy company from this tax. The court described the process with elaboration, and said, in substance, among other things, that it is perfectly apparent that the object and result of pasteurization was to free milk from germs and foreign substances of various kinds without destroying or changing the inherent and essential qualities of the milk itself, and that there was no purpose, by the application of any foreign substance, to change its superficial appearance, or by any method to alter its substantial form and character, as would be the case if it were made into butter and cheese.

We are in accord with the reasoning and result of these cases. The company here is not taxable as though it were a manufacturer as to its business of buying milk and cream, then pasteurizing it, and producing buttermilk, and thereafter selling such products.

It is nevertheless insisted that neither is the company a merchant within the meaning of the Virginia statute. That it has been for many years so classified by the State and city authorities under statutes substantially similar, is a significant circumstance. If it be neither a manufacturer nor a merchant as to this business, we would be forced to conclude that it is

such a peculiar kind of business that the General Assembly failed to include it in any of its definitions, and so relieved it altogether from any license tax, State or local. Of course, such a conclusion should be avoided, for it is certain that the purpose of the tax bill was to reach all similar classes of business by the imposition of license taxes, and we can assume that a business of this magnitude would not be intentionally exempted from such local taxation.

For the company, emphasis is placed upon the fact that the merchant generally has a fixed place of business at which he usually sells his merchandise. That this is true cannot be denied, but the Tax Code itself, section 192, recognizes the fact that there is a class of merchants who have no fixed place of business from which they distribute their goods directly to their customers. This is the section which provides for the licensing and taxation of peddlers who may sell or exchange any personal property a merchant may sell. It is expressly provided that: "All persons who do not keep a regular place of business (whether it be a house or a vacant lot, or elsewhere), open at all times in regular business hours and at the same place, who shall offer for sale goods, wares and merchandise, shall be deemed peddlers under this section;" but the same section provides that a dairyman who uses upon the streets of any city one or more wagons, may sell and deliver from his wagons milk, butter, cream and eggs without procuring a peddler's license. It does not need this statute to support the proposition that a peddler is also a merchant, within the common acceptation of the meaning of such words.

While the question may not be entirely free from difficulty, it seems to us sufficiently clear that the former construction which has been so long put upon substantially similar statutes is correct. While such a business as that conducted by the company differs from that of a merchant who never peddles his goods but has a fixed place of business and is somewhat like that of a merchant who is a mere peddler of

his goods from house to house, it is nevertheless engaged in the business of a merchant—that is, in the buying and selling of food. Certainly those are merchants who are engaged in the business of buying commodities to sell them again. By the express provision of the statute (section 192), the company is not taxable as a peddler on this business, and so, being a merchant, it has been and can be fairly so classified, and should be subjected to a license tax similar to that imposed upon other merchants who are not taxed as peddlers. Any other construction would lead, we think, to unfair discrimination and still greater confusion and uncertainty.

The business is local and necessary for the comfort and convenience of the people of the city. All other such local business is subject to local license taxes. We perceive no sufficient reason in the statute for relieving the company of this local license tax. The alternative holding would result in subjecting it only to the imposition of a State tax upon its capital not otherwise taxed, which is segregated for State taxation only, and cannot be taxed by the municipality.

We are clear in our view, then, that the company should not be taxed as a manufacturer upon this portion of its business. We are equally clear in our conviction that the General Assembly did not intend to relieve such a business of all license taxes, for we find nothing in the statutes to indicate any intention to exclude such merchants from the general class, or to relieve such a local business from local license taxation, or to segregate its capital for State taxation. We therefore conclude that the original construction of these statutes was the correct construction, and that there is nothing in the amended statutes to justify any such new and changed construction as that for which the company here contends.

The order of the trial court relieving the company of the assessment of the license tax of $2,042.50, complained of, will, therefore, be reversed, and the application for relief therefrom dismissed.

*Reversed.*