THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
CEFERINO CASTRO, Defendant and Appellant.

No. 15528.    Argued December 2, 1953.—Decided March 3, 1954.

*Carlos D. Vázquez* for appellant.    *José Trías Monge, Attorney
General,* and *Jaime García Blanco, Special Fiscal of the
Supreme Court,* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the
Court.

The appellant was convicted of the crime of adultera-
tion of milk and sentenced to pay a fine of $25 under the
charge that "he had in his possession and control and trans-
ported cow's milk which he offered and had for sale for
human consumption, which was adulterated with water
added artificially."

The two assignments on appeal challenge the sufficiency
of the evidence.

In addition to the fact of the adulteration by 19 per cent
of water added artificially—which was stipulated—the evi-
dence for the People which consisted of the testimony of
José Yeyo Rojas, Inspector of the Department of Health, is
substantially the same as that for the defense, which con-
sists of the testimony of the defendant himself. It is,
briefly, as follows: "The appellant worked as a driver trans-
porting milk for the Caribbean Dairy, Inc., a pasteurizing

and bottling milk plant located at Santa Ana Street, Stop 24, Santurce., His work consisted of calling for the milk at different dairies and transporting it to the plant. On October 21, 1952, when the defendant returned from one of the rounds and while unloading and delivering the milk to be subjected to the pasteurization process, health inspector José Yeyo Rojas took samples from the cans which the former brought from the different dairies. A laboratory test revealed that the sample obtained from the can labeled "Ramón Cruz" was adulterated with water. All the cans, including the latter, were closed, labeled and sealed, and it was necessary to tear off the labels in order to obtain the samples. After the milk is pasteurized and bottled, the Caribbean Dairy sells it to the public. The pasteurization process, which takes about half an hour, commences from the time the milk is poured out of the cans into a sieve and strained, and then passes to a pasteurizing tank, where the process is completed and the milk bottled.

We need not examine here the cases of *People* v. *Cedrés*, 41 P.R.R. 112, and *People* v. *Vidal*, 44 P.R.R. 502, cited by appellant, and that of *People* v. *Cotis*, 50 P.R.R. 464, cited by the prosecuting attorney. In view of the facts of this case, we cannot agree with the prosecuting attorney that the evidence is sufficient to prove that the milk was *transported* by defendant *for human consumption*—admitting, as did that officer, that the defendant neither offered it nor had it for sale—for, knowing the destination of the milk, the Caribbean Dairy pasteurization plant, as well as the pasteurization process to which it is subjected before selling it to the public, the immediate purpose of the transportation—when the milk was taken from appellant—was not for human consumption. The process of pasteurization consisting of the heating of the milk to a temperature of 145 degrees Fahrenheit and holding it at that temperature for 30 minutes, cooling it rapidly for the purpose of destroying pathogenic organisms—germs, bacteria and other substances that might

be in raw milk—took place between the time the milk was transported from the dairies and the final human consumption. See *H.P. Hood & Sons* v. *Commonwealth*, 127 N.E. 497, 499; *City of Richmond Dairy Co.*, 157 S.E. 728, 732; *City of Louisville* v. *Ewing Von-Allmen Dairy Co.*, 105 S.W. 2d 801, 802. The prosecuting attorney failed to prove that the adulterated milk taken from the can labeled "Ramón Cruz" would be used for human consumption in that condition. On the contrary, the evidence offered by him proved, as has been seen, that the milk from all the cans received at the plant was emptied, and necessarily mingled, into a receptacle or sieve to be strained, and from there it passed to the tank where pasteurization took place. The adulterated milk from the can labeled "Ramón Cruz" was not used for human consumption in such condition but as part of the bulk of the milk brought from the dairies to be pasteurized. It not having been established that the milk, already pasteurized, contained a percentage of water greater than the natural contents of milk, we must necessarily conclude that the evidence was insufficient.

The judgment is reversed and the defendant acquitted.