# Richmond

STATE TAX COMMISSIONER OF THE
COMMONWEALTH OF VIRGINIA

v.

FLOW RESEARCH ANIMALS, INC.

January 16, 1981.

Record No. 781323.

Present: All the Justices.

*John G. MacConnell, Assistant Attorney General (Marshall Coleman, Attorney General; Kenneth W. Thorson, Assistant Attorney General; Norman K. Marshall, Assistant Attorney General,* on briefs), for appellant.

*Joe A. Shull [D.C.] (Charles R. McCarthy, Jr. [D.C.]; Robert J. Ingram; Dunaway, McCarthy, Dye & Stewart, P. C. [D.C.]; Gilmer, Sadler, Ingram, Sutherland and Hutton,* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

Flow Research Animals, Inc. (Flow Research or taxpayer) filed an application for correction of an erroneous assessment of state and local sales taxes for the period September 1966 through September 1970, pursuant to Code § 58-1130. Flow Research contended that, under Code § 58-441.6,* it was exempt from such taxes with respect to purchases of animal food, bedding materials, cages, and medication consumed by laboratory animals produced by Flow Research for sale. In its final order of June 14, 1978, the trial court held in pertinent part:

[P]laintiff's operations are industrial in nature; and . . . plaintiff should have the benefit of Section 58-441.6 of the Code of Virginia of 1950, as amended.

It is hereby ADJUDGED AND ORDERED, that plaintiff, Flow Research Animals, Inc., is exempt from the Virginia Sales and Use tax with respect to purchases by plaintiff of animal food, bedding materials, supplies and medication consumed by laboratory animals produced by plaintiff for sale, pursuant to the provisions of the Code of Virginia of 1950, as amended, Section 58-441.6, based upon the facts extant for the period from [September], 1966 through September, 1970.

---

* Code § 58-441.6, listing exemptions and exclusions from sales and use taxes, provides in pertinent part:

The terms "sale at retail," "lease or rental," "distribution," "use," "storage," and "consumption" shall not include industrial materials for future processing, manufacturing, refining, or conversion into articles of tangible personal property for resale where such industrial materials either enter into the production of or become a component part of the finished product; . . .

In this appeal we shall decide whether the lower court correctly permitted taxpayer the exemption quoted above.

At the hearing on the application held before the trial court, the evidence, basically undisputed, demonstrated the following facts and circumstances: Flow Research is a Virginia corporation engaged in the business of breeding and raising laboratory animals for sale to various groups engaged in bio-medical research. The animals include various strains of rodents as well as dogs, sheep and goats, raised in a highly controlled environment free from common germs and diseases. The original breeders are not produced by Flow Research, but can only be purchased through certain governmentally restricted outlets. Research procedures are intricate and require great care, skill and attention. Taxpayer's building and equipment are specially designed to create a protected environment where temperature, humidity, and ventilation are controlled. All employees of the facility are required to wear surgical jackets and masks when handling the animals, and every effort is made to create a clean environment to protect the animals from exposure to outside contamination. During the period in question, Flow Research employed between 80 to 100 people at its Dublin location, and sold several hundred thousand laboratory animals.

The animals themselves must meet very definite specifications, both in breeding and raising, according to international genetic standards and written protocols and procedures either generated internally or provided to Flow Research by its customers. The animals are ordered by weight, sex, age, or genetic strain, and are sent, germ-free, by Flow Research in special packaging material to customers in the pharmaceutical industry and to educational and governmental institutions throughout the world. At all pertinent times Flow Research purchased animal food, bedding materials, supplies, and medications utilized during breeding and raising. It is on these items that the Virginia Department of Taxation imposed the sales and use taxes which are the subject of this suit.

The question for us to decide is the scope of the exemption, given the facts of this case. Our precedents have established relevant guidelines. Since adoption of the 1971 Constitution, we have strictly construed exemptions under the sales and use tax statutes against the taxpayer, resolving any doubts against the exemption. *Commonwealth v. United Airlines, Inc.,* 219 Va. 374, 381, 248 S.E.2d 124, 128 (1978); *Webster Brick Co.* v. *Department of Taxation,* 219 Va. 81, 84, 245 S.E.2d 252, 254 (1978).

The conclusion of the lower court was that taxpayer's operations

were industrial in nature, but the court did not particularize further as to what part of the exemption statute applied to the activities of Flow Research. The exemption covers "industrial materials for future processing, manufacturing, refining or conversion." Obviously, Flow Research was not engaged in manufacturing, refining, or conversion as those terms are commonly used.

Was it processing? In *Commonwealth* v. *Orange-Madison Cooperative Farm Serv.,* 220 Va. 655, 657-58, 261 S.E.2d 532, 533-34 (1980), we contrasted and distinguished processing from manufacturing, and concluded that processing does not require transformation of raw material into an article of substantially different character, but requires that the product undergo a treatment rendering it more marketable or useful. In that case, we held that the mixing of grains and additives to produce feed and the mixing of chemicals to produce fertilizer constituted processing. In *City of Richmond* v. *Richmond Dairy Co.,* 156 Va. 63, 71, 75, 157 S.E. 728, 730-32 (1931), pasteurization of milk was characterized as processing but not manufacturing. And, in *Solite Corp.* v. *County of King George,* 220 Va. 661, 665, 261 S.E.2d 535, 537-38 (1980), we held that the processing of sand and gravel by washing, screening, and blending, did not transform the raw materials into something substantially different, and did not, therefore, constitute manufacturing.

But even under our broad interpretation of "processing" it is contemplated that the raw material will be treated in some manner, whether by heat (as in pasteurization) or by blending (as in making feed and fertilizer). In the present case, there is no treatment of the breeding animals. They are merely provided a protected hygienic environment within which nature takes its course. We do not consider this activity to be processing of an industrial nature within the purview of the exemption.

We are unwilling to extend the definition of processing in *Commonwealth* v. *Orange-Madison, supra.* We do not believe processing includes the growth of laboratory animals in the manner demonstrated by the evidence. The exemption statute is the product of the General Assembly, and we must resolve any doubt against the taxpayer. If this activity is to be exempt, it should be addressed by more specific and narrowly drawn legislation.

We therefore reverse the judgment of the trial court and dismiss the application of Flow Research.

*Reversed and final judgment.*

POFF, J., dissenting.

It is true, of course, that the commodity the taxpayer sells could not be produced unless "nature takes its course". It is also true, however, that the commodity is not the product of the laws of nature. Rather, as an offspring of parents of different genetic characteristics, it is a genetic amalgam with traits and characteristics distinctly different from those of either parent. The customary course of nature ends at birth. Thereafter, the taxpayer applies a disciplined system of scientific practices and procedures which manipulate environmental and biological factors and divert growth and development from the course nature normally takes. The end result is a new product, wholly unlike the unrefined raw materials from which it was derived, one which meets the unique specifications of a market which, though highly specialized, is international in scope.

In my view, the taxpayer's operation, "industrial" by any fair definition of the word, constitutes a method of "processing" which produces a commodity "more marketable and useful" than the original raw materials. Applying the principles of *Commonwealth* v. *Orange-Madison Coop.*, 220 Va. 655, 657-58, 261 S.E.2d 532, 533-34 (1980), I would affirm the judgment of the trial court.

COMPTON, J., joins in dissent.