**HARLAN SPRAGUE DAWLEY, INC., Appellant,**

v.

**IOWA STATE BOARD of TAX REVIEW, Appellee.**

No. 98–197.

Supreme Court of Iowa.

Oct. 13, 1999.

---

B. Keith Shake of Henderson, Daily, Withrow & DeVoe, Indianapolis, Indiana, and James G. Sawtelle and John V. Donnelly of Sullivan & Ward, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Harry M. Griger, Special Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and TERNUS, JJ.

LARSON, Justice.

The issue before us is whether raw feed ingredients, pelletized and fed by the plaintiff to its laboratory animals, qualifies under the "processing" exemption from sales tax under Iowa Code section 422.42(3) (1991). We agree with the board of review and the district court that these ingredients are not exempt because the

raising of laboratory animals is not "processing" under the statute.

## I.  Facts and Prior Proceedings.

Harlan Sprague Dawley, Inc. (HSD) manufactures special laboratory animal feed and also raises special strains of "genetically defined" laboratory animals, mainly rats and mice. HSD purchases raw feed ingredients and additives and makes them into a specialized animal feed in its Teklad feed mill in Iowa. This pelletized feed has a unique nutritional makeup necessary for the animals' optimal growth. HSD sells approximately forty percent of this feed to third parties. The balance, sixty percent, is fed to HSD's own animals, which it raises for sale. HSD contends that its special feed, genetic selection, and specialized growing techniques have yielded animals significantly different from their rodent relatives in the wild.

In 1992 the Iowa State Board of Tax Review assessed sales tax for the period of July 1, 1987, to June 30, 1991, on HSD's purchases of raw feed ingredients. (The board did not assess tax on the purchases that were used to make the forty percent of HSD's feed it sold to third parties for resale, and the exemption on those purchases is not an issue.) HSD filed a protest. In a contested case hearing, an administrative law judge concluded HSD's raising of laboratory animals was not "processing" within the meaning of Iowa Code section 422.42(3), and the feed ingredients were not exempt from sales tax. The board and the district court affirmed.

## II.  Standard of Review.

We discussed the principles underlying judicial review of agency decisions in *Foods, Inc. v. Iowa Civil Rights Commission,* 318 N.W.2d 162 (1982):

The district court, when exercising the power of judicial review conferred by section 17A.19, is itself functioning in an appellate capacity to correct errors of law, as specified in section 17A.19(8). "Thus, when this court reviews a decision of a district court rendered pursuant to section 17A.19, the sole question is whether the district court correctly applied the law. In order to make that determination, this court applies the standards of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court."

*Foods,* 318 N.W.2d at 165 (footnote omitted) (citations omitted) (quoting *Jackson County Pub. Hosp. v. PERB,* 280 N.W.2d 426, 429–30 (Iowa 1979)).

## III.  The Statutes.

Two statutes are involved. The first, Iowa Code section 422.43(1), imposes a sales tax

upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this division, sold at retail in the state to consumers or users. . . .

The second statute, Iowa Code section 422.42(3), defines "retail sale" as

the sale to a consumer or to any person for any purpose, *other than for processing,* for resale of tangible personal property or taxable services. . . . *Tangible personal property is sold for processing within the meaning of this subsection only when it is intended that the property will, by means of fabrication, compounding, manufacturing, or germination become an integral part of other tangible personal property intended to be sold ultimately at retail. . . .*

(Emphasis added.)

## IV.  Summary of Arguments.

HSD claims it processes the feed ingredients by feeding them, in pellet form, to its animals, which are sold by it at retail. It is entitled to this exemption, it claims, because the feed is assimilated into the animals and becomes a part of them through "processing." The board's response is that HSD does not process the

feed into rats and mice; while HSD might facilitate the process, these functions are performed by the animals themselves.

### V. Entitlement to the Exemption.

■ The theory underlying the section 422.42(3) exemption is that the cost of production is included in the retail price of a manufactured product and therefore would ultimately be subject to tax on the sale of the product. *See Heartland Lysine, Inc. v. Department of Revenue & Fin.*, 503 N.W.2d 587, 589 (Iowa 1993). The exemption prevents double taxation, and the resulting higher prices to consumers. *Id.* at 588–89.

■ Our tax-exemption statutes must be strictly construed with all doubt resolved in favor of taxation; a party seeking an exemption has the burden to prove its entitlement to it. *Id.* (citing *North Star Steel Co. v. Iowa Dep't of Revenue*, 380 N.W.2d 677, 680 (Iowa 1986)). There is no dispute that the raw materials purchased to produce feed qualify as tangible personal property; the only dispute is whether HSD can show it has "processed" the raw materials as to the feed consumed by its own animals.

■ The Iowa Department of Revenue and Finance has a rule defining "processing" as

an operation or a series of operations whereby tangible personal property is subjected to some special treatment by artificial or natural means which changes its form, context, or condition, and results in marketable tangible personal property. These operations are commonly associated with fabricating, compounding, germinating, or manufacturing.

Iowa Admin. Code r. 701—18.29(1) (citation omitted). *See also Iowa Auto Dealers Ass'n v. Iowa Dep't of Revenue*, 301 N.W.2d 760, 764 (Iowa 1981) ("Processing essentially connotes the transformation of raw material into a finished product."); *Linwood Stone Prods. Co. v. State Dep't of*

*Revenue*, 175 N.W.2d 393, 395 (Iowa 1970) (applying rule's definition). Agency rules are ordinarily given the force and effect of law, *Hildreth v. Iowa Dep't of Human Servs.*, 550 N.W.2d 157, 160 (Iowa 1996), provided they are reasonable and consistent with legislative enactments, *Fernandez v. Iowa Dep't of Human Servs.*, 375 N.W.2d 701, 707 (Iowa 1985).

Under the department's rules, processing begins when "the 'form, context, or condition' of tangible personal property is changed with the intent of eventually transforming a property into a saleable finished product." Iowa Admin. Code r. 701—18.29(2) (citations omitted). Processing ends "when the property being processed is in the form in which it is ultimately intended to be sold at retail." Iowa Admin. Code r. 701—18.29(3) (citation omitted).

In a case closely analogous to the present one, *Kennedy v. State Board of Assessment & Review*, 224 Iowa 405, 276 N.W. 205 (1937), the issue was whether using fertilizer to grow vegetables was "processing." The grower in *Kennedy* claimed that the fertilizer was exempt from sales tax because the vegetables absorbed the fertilizer, and he was therefore a processor under the statute. *Kennedy*, 224 Iowa at 406, 276 N.W. at 206. We denied the exemption, holding that the taxpayer's activity was growing crops, not processing. *Id.* at 407, 276 N.W. at 206. Our tax-exemption statute was amended in response to *Kennedy*, to provide that processing can include "germination."

■ HSD seizes on this legislative amendment and contends its production of laboratory animals should be considered to be germination. "Germinate" is "to cause to sprout or grow ... to cause to originate or develop ... to shoot forth like a plant ... to begin to grow: SPROUT used esp. of a spore or seed ... to come into being." Webster's Third New International Dictionary 951 (unabr.ed.1986). To accept HSD's germination argument, however,

would take considerable liberty with the definition of germination, in the face of the principle that our exemption statutes are to be narrowly construed. *See Heartland,* 503 N.W.2d at 588–89. We do not believe HSD's raising of laboratory animals can be considered germination under section 422.42(3).

Cases from other jurisdictions have denied exemptions under similar statutes. In *Charles River Breeding Laboratories, Inc. v. State Tax Commission,* 374 Mass. 333, 372 N.E.2d 768, 770 (1978), the court held that the taxpayer's specialized process of raising germ-free mice as biomedical research animals was not "manufacturing," so the machinery used to raise the animals was not exempt. *Id.* In *State Tax Commissioner v. Flow Research Animals, Inc.,* 221 Va. 817, 273 S.E.2d 811, 813 (1981), the court held that feed, bedding, and supplies consumed by rodents, dogs, sheep, and goats raised in controlled environments for research purposes were not exempt from sales tax as raw materials for processing or manufacturing because the raising of animals did not constitute manufacturing or processing. The court stated:

> [E]ven under our broad interpretation of "processing" it is contemplated that the raw material will be treated in some manner, whether by heat (as in pasteurization) or by blending (as in making feed and fertilizer). In the present case, there is no treatment of the breeding animals. They are merely provided a protected hygienic environment within which nature takes its course. We do not consider this activity to be processing of an industrial nature within the purview of the exemption.

*Id.*

In Oklahoma a feed lot operator who used special feed to fatten cattle for market was held not to be entitled to a tax exemption for the feed. The court said

> the feed was processed when it was mixed and made ready for sale for feeding purposes. It was consumed, not processed, when it was fed to the live-

stock. A small part of it was changed, by nature, and converted into flesh and part into improving the quality of all the flesh of the animal.....

. . . .

> The feed was not sold to the owner of the cattle for use in "processing" or "preparing for sale" so that the same becomes a "recognizable, integral part" of any finished product "for the purposes of re-sale" or "the subject matter of re-sale", so as to exempt sales from liability for the tax as provided in Secs. 6 and 14.

*Colbert Mill & Feed Co. v. Oklahoma Tax Comm'n,* 188 Okla. 366, 109 P.2d 504, 506–07 (1941). Similarly, the court in *Perdue, Inc. v. State Department of Assessments & Taxation,* 264 Md. 228, 286 A.2d 165, 170 (1972), held that the taxpayer who raised broiler chickens from eggs could not claim the eggs were exempt from local tax as the raw materials for manufacturing.

Here, appellant simply takes a naturally fertilized egg which has the capacity of life and places it in an environment conducive to further development. To suggest as appellant does that it manufactures eggs or chickens is to disregard the rather essential part the hen and rooster play. These are the protagonists that cause the substantial transformation from egg to chick, not Perdue[,] which merely places the eggs in an area most suitable for permitting nature to take its course. In the present state of ... technology we cannot accept the notion that manufacturing can ever occur when the end product is a living organism.

*Id.; see also Holloway v. State,* 262 Ala. 437, 79 So.2d 40, 42 (1955) (farmer who purchased baby chicks and delivered them to others to care for them for six to eight weeks until they were sold to processing plants was not a "manufacturer or compounder" entitled to an exemption for use tax on feed and medicine for the chicks); *McElhaney Cattle Co. v. Smith,* 132 Ariz.

286, 645 P.2d 801, 807 (1982) (feeder cattle were not exempt from taxes as raw materials for manufacturing where commercial feedlot owners raised steers for market through sophisticated methods; raising cattle did not constitute manufacturing); *Teague v. Scurlock,* 223 Ark. 271, 265 S.W.2d 528, 529 (1954) (poultry breeder's purchase of feed to raise day-old chicks to broilers to be slaughtered was not exempt as tangible personal property used in manufacturing or processing; feed was not processed, manufactured, or compounded into chickens); *Zeigler v. People,* 109 Colo. 252, 124 P.2d 593, 595 (1942) (holding livestock dealer who fed cattle for market was not exempt from licensing statute on ground that he was a "processor" of farm products; growing of article is not processing) (citing *Kennedy,* 224 Iowa at 407, 276 N.W. at 206); *Salt Lake Union Stock Yards v. State Tax Comm'n,* 93 Utah 166, 71 P.2d 538, 540 (1937) (farming, dairying, or stock raising did not constitute manufacturing or compounding under sales tax exemption statute and thus taxpayer's purchases of feed for livestock held for slaughter did not qualify for exemption); *Stoner Creek Stud, Inc. v. Revenue Cabinet Commonwealth of Kentucky,* 746 S.W.2d 73, 75 (Ky.Ct.App.1987) (breeding and raising horses for sale was not "manufacturing" or "processing" within statute to allow breeder an exemption from sales tax on horse feed); Chun P. Jhong, Annotation, *What Constitutes Manufacturing and Who is a Manufacturer Under Tax Laws,* 17 A.L.R.3d 7, 131 (1968) (providing specific examples of manufacturing, including incubating chicken eggs; raising cattle and/or chickens, however, does not constitute manufacturing).

Some courts have applied their states' exemption statutes more broadly. For example, the Indiana Tax Court in *Harlan Sprague Dawley, Inc. v. Indiana Department of State Revenue,* 605 N.E.2d 1222, 1230 (Ind. Tax Ct.1992), decided that purchases of supplies and equipment for HSD's animal-breeding operation were exempt from sales tax because the operation constituted manufacturing or processing. This decision, however, was controlled by an earlier Indiana Supreme Court case adopting an expansive reading of the term "production" in the tax-exemption statute in accordance with the legislature's intent of encouraging industrial growth. *Harlan Sprague Dawley,* 605 N.E.2d at 1229–30 (citing *Indiana Dep't of State Revenue v. Cave Stone, Inc.,* 457 N.E.2d 520, 524 (Ind. 1983)). Similarly, in *Bain v. Department of Revenue,* 293 Or. 163, 646 P.2d 12, 18 (1982), the court held a salmon hatchery was a manufacturing facility entitled to property tax exemption, based on Oregon's legislative intent to promote the state's economy. In contrast to the Indiana and Oregon cases, our cases adopt a narrow interpretation of the exemption statutes. *Heartland,* 503 N.W.2d at 588–89.

■ For the same reasons we rejected the argument in *Kennedy* that fertilizer is processed into vegetables, we reject HSD's argument here, which, in essence, is that it has processed raw feed ingredients into a saleable product, *i.e.,* laboratory animals.

■ It is not enough, as HSD alternatively argues, that its processing of the feed ingredients into feed is sufficient to qualify for the exemption for the ingredients consumed by its laboratory animals. HSD argues that, even if the final step, the assimilation of the feed by the laboratory animals, is not considered to be processing, HSD should nevertheless be entitled to the exemption because most of the processing steps are completed before the feed is actually consumed. However, changing the raw ingredients into feed is not the processing with which we are concerned; HSD has already received an exemption for raw materials processed into the feed it sells. The issue is whether the laboratory animals HSD sells have been processed by it. For the reasons discussed, we answer in the negative.

**AFFIRMED.**