El Pueblo de Puerto Rico, demandante y apelado, *v.* Emilio Cotis, acusado y apelante.

Núm. 5875.—*Sometido:* Mayo 5, 1936. *Resuelto:* Julio 28, 1936.

*Miguel A. García Méndez,* abogado del apelante; *R. A. Gómez, Fiscal* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Se acusó por el Fiscal del Distrito de Mayagüez a Emilio Cotis y a Juan Casiano como autores de un delito de adulteración de leche cometido en San Germán, en noviembre 27, 1934, al transportar leche de vaca adulterada dedicada al consumo humano.

Alegó el acusado Cotis que no era culpable y celebrado el juicio, la corte, en marzo 7, 1935, lo condenó a pagar veinte y cinco dólares de multa. Apeló para ante este Tribunal Supremo y señala como errores la desestimación de su moción de *nonsuit* y el pronunciamiento de la sentencia condenatoria sin prueba y en contra de la jurisprudencia de este Tribunal Supremo.

Al comenzar el juicio, ambas partes estipularon que si el químico del Departamento de Sanidad fuera llamado, "declararía que una muestra de leche que le fué remitida allá para el mes de noviembre o diciembre del 1934, marcada con las iniciales A. B. número 47, fué examinada por dicho químico, y que la misma resultó adulterada con un 46 por ciento de agua añadida artificialmente."

Luego se oyó el testimonio de Arturo Benavent. A preguntas del fiscal respondió que el 27 de noviembre de 1934 se dedicaba a tomar muestras de leche como empleado de Sanidad en el municipio de San Germán y se dirigió al depósito de leche de doña Conchita Montalvo viendo llegar al acusado como de siete a ocho de la noche con la guagua propiedad de la Blue Ribbon Dairies, deteniéndolo al bajar los porrones de la guagua e informándole que necesitaba algunas muestras de la leche para mandarlas al Departamento de Sanidad. Con su consentimiento rompió las amarras de los

porrones y tomó tres muestras de leche una de las cuales le entregó, enviando otra al departamento, y conservando la restante, en su oficina, marcándolas A. B. núm. 47.

Repreguntado por la defensa contestó que el acusado era el que manejaba la guagua, no recordando si había otra persona encargada de la transportación; que se paró frente al depósito; que los porrones estaban completamente precintados en la tapa sin que sepa quién los precintó; que tenían la inscripción corriente de la vaquería de donde procedían; que tenía la convicción de que nadie había abierto los porrones después de haber sido precintados; que los porrones procedían de la vaquería de Antonio Olivieri.

Repreguntado si sabía que Juan Casiano había sido denunciado conjuntamente con Ortíz, intervino el fiscal y admitió que Casiano que viajaba en la guagua, fué denunciado y sentenciado por el mismo delito.

A nuevas preguntas del fiscal contestó el testigo que el carro paró en la calle Parque, San Germán, frente al depósito de doña Conchita Montalvo, bajándose los porrones y entrándose al depósito, tomándose las muestras dentro del depósito.

Esa fué toda la prueba de cargo presentada. Basándose en que era insuficiente para condenarlo el acusado pidió su absolución y la corte decidió su petición como sigue:

"Hon. Juez: Dentro de las condiciones la Corte no tiene más remedio que declarar sin lugar la moción. El delito de adulteración de leche es como la mayor parte de esos delitos que no requiere una intención. Lo que se necesita es el hecho. La ley es drástica pero ésa es la ley. No hay duda ninguna, o mejor dicho, ha habido prueba suficiente para que la Corte entienda que hay un caso contra él. Se ha demostrado que él ha transportado leche adulterada; de manera que el hecho de que haya habido otra persona que se ha declarado culpable de haber adulterado esa leche, no revela a este acusado de responsabilidad. Este hombre transportó la leche adulterada esa; se condujo de un sitio a otro leche adulterada. . . .

"Licdo. Baigés: Que no se ha probado que esa leche sea dedicada al consumo humano.

"Hon. Juez: Pero ha habido prueba aquí que ese carro de leche paró frente a un depósito y que esos porrones se apearon del carro y fueron llevados al depósito. Basta que una leche esté en un depósito público, para que sea para el consumo humano."

Declaró entonces en su defensa el propio acusado. Dijo que era el *chauffeur* de una guagua de la Blue Ribbon Dairies que transportaba leche de Guánica a Mayagüez, tomándola de distintas vaquerías en porrones precintados y lacrados con el nombre de la vaquería que eran colocados en la guagua por el peón de la misma; que no tiene autoridad para investigar el contenido de los porrones; que las oficinas de la Blue Ribbon están en Mayagüez y que los porrones examinados se los entregaron precintados y lacrados en la vaquería de don Antonio Olivieri situada en el barrio de Palmarejo de Lajas. ·

La prueba de descargo terminó con la presentación de un *affidavit* de Juan Casiano admitido sin oposición del fiscal, manifestando que fué él el que por una inadvertencia causó la adulteración de la leche transportada por Emilio Cotis en este caso.

Sostiene el apelante en su alegato que no habiéndose probado que cometiera el delito que se le imputa en ninguna de sus modalidades, debe revocarse la sentencia condenatoria que contra él se dictara y decretarse su absolución. Se funda principalmente en la jurisprudencia sentada por esta corte en los casos de *El Pueblo* v. *Cedrés,* 41 D.P.R. 112 y *El Pueblo* v. *Vidal,* 44 D.P.R. 519.

Se imputó al acusado Cotis el transporte de leche adulterada para el consumo humano, hecho constitutivo de delito de acuerdo con la ley. No había que demostrar que fuera él el que verificara la adulteración. [2] Y la circunstancia de que la otra persona que con él fuera acusada del transporte se declarara culpable de la adulteración, no lo exime de su responsabilidad por el transporte. Esto es claro.

La prueba de la transportación es evidente. Se admite por el propio acusado apelante el hecho. Y que la leche

se destinaba para el consumo humano, se presume de haberse descargado los porrones que la contenían en el depósito de la señora Montalvo en San Germán. *Pueblo* v. *Bauzá,* 34 D.P.R. 331; *Pueblo* v. *Pérez,* 23 D.P.R. 877.

Se insiste en que el acusado apelante nada sabía ni podía saber yendo como iban precintados los porrones y es a ese respecto que se invocan los casos de Cedrés, supra, y de Vidal, supra.

En el primero de dichos casos se hizo énfasis en que Cedrés no transportaba leche de las distintas vaquerías para dedicarla al consumo humano ''sino para entregarla a la persona a quien iba dirigida, la que podía hacer con ella el uso que mejor le pareciera.'' Aquí el acusado Cotis no sólo transportó la leche si que la dejó en un depósito destinado a la venta de leche para el consumo humano.

Y en el caso de Vidal, supra, se resolvió qué: ''Compradores de leche que se limitan a transportarla del sitio en que la compran a un depósito, no son responsables de transportar leche adulterada para el consumo humano *si en el camino se detiene al que fué por ella para traerla y, examinada la leche, se encuentra adulterada.''* (Itálicas nuestras.) La situación era distinta.

La declaración del acusado apelante en vez de mejorar empeoró su situación. El fiscal sostiene en su alegato que lo que demuestra es que actuó fuera de su empleo convirtiéndose en cómplice de Casiano en la venta hecha por éste en el depósito de San Germán. Y quizás tenga razón.

*Debe declararse sin lugar el recurso y confirmarse la sentencia recurrida.*

El Juez Asociado Señor Córdova Dávila no intervino.