EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CEFERINO CASTRO, acusado y apelante.

Número 15528.

*Sometido:* 2 de diciembre de 1953. *Resuelto:* 3 de marzo de 1954.

*Carlos D. Vázquez,* abogado del apelante; *Hon. Secretario de Justicia José Trías Monge* y *Jaime García Blanco, Fiscal Especial, Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Negrón Fernández emitió la opinión del tribunal.

El apelante fué convicto del delito de adulteración de leche y sentenciado a pagar una multa de $25 bajo acusación de que "tenía en su posesión y dominio y transportaba leche de vaca que ofrecía y tenía a la venta para el consumo humano, adulterada con agua añadida artificialmente."

Los dos errores señalados en apelación van dirigidos a impugnar la suficiencia de la prueba.

Además del hecho de la adulteración en un 19 por ciento de agua añadida artificialmente—que fué estipulado—la prueba de cargo, consistente del testimonio del Inspector de Saneamiento del Departamento de Salud, José Yeyo Rojas, es sustancialmente igual a la de defensa, consistente del testimonio del propio acusado. En resumen, es ésta: el apelante trabajaba como conductor de un transporte de leche de la Caribbean Dairy, Inc., una planta pasterizadora y embotelladora de leche en la Calle Santa Ana, Parada 24 en Santurce. Su trabajo consistía en recoger leche de diversas vaquerías y conducirla a dicha planta. El 21 de octubre de 1952, al regresar el acusado de uno de sus recorridos, y cuando se descargaba la leche y se entregaba para iniciar el proceso de pasterización, el Inspector de Saneamiento José Yeyo Rojas tomó muestras de los porrones que aquél trajera de las distintas vaquerías, resultando adulterada con agua, luego de sometida a examen de laboratorio, la muestra obtenida del porrón rotulado "Ramón Cruz". Todos los porrones, incluyendo este último, estaban cerrados, rotulados y precintados, y hubo que romper los precintos para obtener las muestras. La Caribbean Dairy, luego de pasterizar y embotellar la leche, la expende al público. El proceso de pasterización, que tarda como media hora, se inicia vaciando la leche de los porrones en un cedazo para colarla pasando de ahí a la máquina pasterizadora y en la máquina misma, completado el proceso, se va embotellando.

Es innecesario examinar aquí los casos de *Pueblo* v. *Cedrés*, 41 D.P.R. 112 y *Pueblo* v. *Vidal*, 44 D.P.R. 519, invocados por el apelante y el de *Pueblo* v. *Cotis*, 50 D.P.R. 484, citado por el fiscal. Bajo los hechos del presente caso no podemos convenir con el fiscal en que la prueba es suficiente para demostrar que la leche se *transportaba* por el acusado *para el consumo humano*—concedido, como está por dicho funcionario que el acusado ni la ofrecía en, ni la tenía para la venta—pues conocido el destino de la misma, la planta de pasterización de la Caribbean Dairy, así como el proceso de pasterización a que sería allí sometida antes de ofrecerse al público, su transportación—cuando fué ocupada al apelante—no tenía como objetivo inmediato el consumo humano. Entre el estado de la leche según venía de las vaquerías y su final consumo por el hombre, intervenía el proceso de pasterización, que consiste en someter la leche a una temperatura de 145 grados Farenheit por 30 minutos y enfriarla luego rápidamente, destruyendo en esa forma organismos patógenos—gérmenes y bacterias y otras sustancias que pueden estar presentes en la leche cruda. Véanse *H. P. Hood & Sons* v. *Commonwealth*, 127 N. E. 497, 499; *City of Richmond* v. *Richmond Dairy Co.*, 157 S. E. 728, 732; *City of Louisville* v. *Ewing Von-Allmen Dairy Co.*, 105 S.W.2d 801, 802. El fiscal no probó que el estado de adulteración en que la leche del porrón de Ramón Cruz fué hallada habría de pasar al consumo humano en esa misma forma. Por el contrario, su propia prueba demostró, como hemos visto, que la leche de todos los porrones recibidos en la planta se vaciaba—mezclándose por necesidad—en un receptáculo o cedazo para colarla y de ahí pasaba a la máquina donde tenía lugar el proceso de pasterización. La leche adulterada del porrón de Ramón Cruz no pasaba al consumo humano como tal, sino como parte de la totalidad de la leche traída de todas las vaquerías y luego de pasterizada. No habiéndose establecido que la leche, ya pasterizada, contuviera un por ciento de

agua mayor que el contenido natural de la leche, es forzosa la conclusión afirmativa sobre insuficiencia de prueba.

*La sentencia será revocada y absuelto el acusado.*