**SOUTHERN SIOUX COUNTY RURAL WATER SYSTEM, INC., Appellant,**

v.

**IOWA DEPARTMENT OF REVENUE, Appellee.**

No. 85–848.

Supreme Court of Iowa.

March 19, 1986.

Terry Huitink, Ireton, for appellant.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Gerald A. Kuehn, Asst. Atty. Gen., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, WOLLE and LAVORATO, JJ.

McGIVERIN, Justice.

The questions involved here arose in connection with a decision by respondent Iowa Department of Revenue to deny a refund claim filed by petitioner Southern Sioux County Rural Water System, Inc., for sales tax paid on the purchase of electricity used in its business. The department ruled that certain steps of petitioner's water treatment and movement operations did not constitute "processing," and, therefore, the electricity purchased for use in those steps was not exempt from Iowa retail sales tax. On judicial review, the district court affirmed respondent's decision and held that the claim for refund was properly denied. We affirm the district court and uphold the department's decision.

The issue presented for our review concerns the applicability under this record of the exemption for sales tax paid on electricity consumed in processing tangible personal property in petitioner's operations. Iowa Code § 422.42(3) (1983); 730 Iowa Admin. Code 17.3.

I. *Background facts and proceedings.* Petitioner is a non-profit corporation engaged in the business of providing treated water to farmsteads for livestock use. The parties stipulated before the agency in a contested case proceeding, Iowa Code section 17A.2, that the following procedures accurately describe petitioner's water treatment operations:

1. Underground water is drawn from wells one-half mile from the treatment plant and pumped through pipe to the treatment plant.

2. At the treatment plant, the water is passed first through an aeration system.

3. Then the water is run through a flocculator where potassium is added.

4. After that, the water is run through a filter system whereby the iron (rust) is removed.

5. Then the final step is the addition of chlorine after which the water is run into the clear wells where it is held for distribution.

6. As the supply necessitates, the water is then pumped from these clear wells into three water towers in the rural area where it is finally dispensed through gravity to the rural farmsteads.

Petitioner filed a claim for refund of the sales tax paid on the purchase of electricity used in the operations described above, claiming that it was entitled to an exemption under Iowa Code section 422.42(3) which provides:

"Retail sale" and "sale at retail" means the sale to a consumer or to any person for any purpose, other than for processing . . . :

That same section provides an exemption from retail sales tax for

electricity . . . when purchased and used in the processing of tangible personal property intended to be sold ultimately at retail.

Respondent department agreed with petitioner taxpayer that steps two through five, ending with the addition of chlorine, constituted "processing" under section 422.42(3) and that the electricity purchased for use in those steps was exempt from sales tax. However, respondent determined that steps one, and part of five and six occurred either before processing began or after processing ended, and, therefore, the electricity used for those steps was subject to sales tax. The taxpayer sought refund for sales tax paid on all the electricity used in steps one through six. The entire claim for refund was denied because only a minimal amount of electricity was expended in steps two through part of five, and petitioner failed to establish that

amount.[1] In any event, petitioner was not seeking a refund on the very small amount of electricity the department conceded was used in processing. Thus, the refund claim was submitted on an "all or nothing" basis.

On May 17, 1983, petitioner filed a protest with the department appealing the action. 730 Iowa Admin.Code 7.8. A tax review committee of the department reviewed the protest and denied the claim for refund. 730 Iowa Admin.Code 7.11(1)(a). Petitioner still desired to pursue the protest. The department then filed an answer to protest, 730 Iowa Admin.Code 7.12, and an evidentiary hearing was held in this contested case. Iowa Code § 17A.12; 730 Iowa Admin.Code 7.14 and .17. In a proposed decision, the hearing officer concluded the department properly denied the refund claim because the portion of petitioner's operations for which the refund was sought did not constitute "processing" under Iowa Code section 422.42(3) and the corresponding rules promulgated thereunder, agency rules 730 Iowa Admin.Code 17.3 and 18.29. This became the final decision of the agency. *See* Iowa Code § 17A.15(3).

Petitioner timely filed a petition for judicial review in district court, Iowa Code section 17A.19, and the court affirmed the department's decision.

Petitioner appealed to us. Iowa Code § 17A.20. Petitioner contends the department's decision was arbitrary and unreasonable. Iowa Code § 17A.19(8)(g).

We recently stated the principles governing our review in this type of a proceeding in *North Star Steel Co. v. Iowa Department of Revenue*, 380 N.W.2d 677, 679–80 (Iowa 1986), and need not repeat them here.

■ II. *The "processing" exemption.* Because petitioner seeks relief under a tax exemption statute, Iowa Code section 422.-42(3), the exemption is construed strictly against the taxpayer and liberally in favor of the taxing body. *North Star*, 380 N.W.2d at 680; *Iowa Auto Dealer's Association v. Iowa Department of Revenue*, 301 N.W.2d 760, 762 (Iowa 1981). The taxpayer has the burden of proving its entitlement to the exemption. *Kartridg Pak Co. v. Department of Revenue*, 362 N.W.2d 557, 561 (Iowa 1985).

There is a retail sales tax imposed on the gross receipts from all sales of personal property, absent a statutory exemption. *See* Iowa Code §§ 422.42–.59. Electricity purchased and used in processing tangible personal property is exempt from retail sales tax. Iowa Code § 422.42(3). Agency rule 730 Iowa Admin.Code 17.3 (1984), which was promulgated pursuant to section 422.42(3), provides in part:[2]

Receipts from the sale of electricity or steam to be used in the processing of tangible personal property intended to be sold ultimately at retail shall be exempt from sales tax.

The term "processing" is further defined in agency rule 730 Iowa Admin.Code 18.29 as follows:

For the purpose of these rules, "processing" means an operation or a series of operations whereby tangible personal property is subjected to some special treatment by artificial or natural means which changes its form, context, or condition, and results in marketable tangible personal property. These operations are commonly associated with fabricating, compounding, germinating, or manufacturing. *Linwood Stone Products Co. v. State Department of Revenue*, 175 N.W.2d 393 (Iowa 1970).

This rule is intended to implement sections 422.42 and 423.1 of the Code.

In interpreting the governing sales tax exemption statute and the operative agency rules, we consider whether steps one, and part of five and six of petitioner's opera-

---

**1.** During the contested case hearing, petitioner's manager estimated that approximately two percent of total electricity usage occurred during steps two through five, ending with the chlorination.

**2.** On October 23, 1985, agency rule 730 Iowa Admin.Code 17.3 was amended and subdivided but that amendment has no effect on this case.

tions involve "processing" of water, and, thus, would permit petitioner to obtain a refund for sales tax paid on the electricity purchased and used for those steps.

In step one, petitioner draws water from three wells located one-half mile from its treatment plant. The water is pumped through pipes by electrical power to the treatment plant. Because the water drawn from the wells is unsuitable for marketing in its present state, it must be subjected to treatment processes in steps two through part of five to decrease its iron content and other chemicals must be added to it at the treatment plant. In the last part of step five and in step six, the chemically-treated water is released by electrical power into holding tanks for eventual distribution to water towers. Thus, those steps for which petitioner seeks exemption involve the transportation of water to and from the treatment facility.

### A. Pre-treatment steps.

In *Linwood Stone Products Co. v. State Department of Revenue*, 175 N.W.2d 393 (Iowa 1970), this court considered a similar claim for exemption under section 422.42(3) (1962) for fuel the taxpayer claimed was used in processing. In *Linwood*, the taxpayer sought exemption from sales tax paid on diesel fuel purchased to operate loading machines and trucks in its limestone mine operation. Specifically, the taxpayer contended that the use of the fuel in diesel-powered machines, which moved and loaded limestone blasted from rock formations into diesel-powered trucks which in turn transported the limestone to mechanical stone crushers one-half mile away from the quarry, was used in "processing."

We upheld the state tax commission's denial of the taxpayer's claim for refund of sales tax paid on the diesel fuel because

> until there is a severance of raw material later to be processed from the real estate, processing as contemplated in these

tax exemption statutes cannot commence, and that here after severance by blasting, the form, context or condition of the limestone rock was not changed until it reached the company crusher. *Id.* at 395.

■ In the present case, the electricity used by petitioner to pump water drawn from its wells to the treatment plant is analogous to the fuel used in *Linwood* to convey the extracted limestone from the mine to a truck which then transported the rock to a crusher machine. We held these steps involving merely the transportation of the raw material did not constitute processing. Further, there is no evidence that the water drawn from the wells was altered at all until it arrived at the treatment plant. Its "form, context or condition" remained the same from the time it was extracted from the wells until it was pumped into the treatment plant. *Id.*

Therefore, it is consistent with our holding in *Linwood* and the applicable agency rules to conclude that step one of petitioner's operations did not constitute "processing," and the electricity purchased for that use was not exempt.

B. *Post-treatment steps.* Once the water is treated at the plant, it is pumped by electrical power to holding tanks for eventual distribution to water towers in steps five and six of petitioner's operations. The form of the water is not changed at this time; it is merely transferred from one site to another.

In *Peoples Gas & Electric Co. v. State Tax Commission*, 238 Iowa 1369, 28 N.W.2d 799 (1947), the taxpayer appealed from an assessment under the state use tax law,[3] claiming the assessed materials were used in "processing" under Iowa Code section 423.1 (1946) and were, thus, exempt. We determined that the purpose of the materials for which the exemption was claimed involved the distribution of

---

**3.** Although the processing exemption was claimed under the use tax statute, the reasoning is applicable here. In *Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Commission,*

248 Iowa 497, 499, 81 N.W.2d 437, 439 (1957), we stated: "It therefore seems immaterial whether the tax was assessed or the [processing] exemption is claimed under chapter 422 or 423."

gas and electricity and not its manufacture. Our reasoning was as follows:

> One who hauls ice and cuts from a block, sufficient ice for each householder's needs, is not a processor. He merely delivers the ice. His delivery may be termed a service to consumers but he does not service the ice.

*Id.* at 1386, 28 N.W.2d at 809.

■ In other words, delivery and distribution of a product does not involve "processing" within the meaning of the exemption from sales or use tax.

In *Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Commission*, 248 Iowa 497, 81 N.W.2d 437 (1957), we again addressed the issue of when "processing" ends. There, we did not allow an exemption from sales tax paid on electricity used for refrigeration after food products had been processed by a "sharp freeze" for a certain time. We reasoned that the later period of refrigeration merely preserved the food in its present state and did not change its form. *Id.* at 503–04, 81 N.W.2d at 441; *see also Hy-Vee Food Stores, Inc. v. Iowa Department of Revenue*, 379 N.W.2d 37, 42–43 (Iowa Ct.App.1985) (cooler system to prevent food contamination not used in "processing").

The electricity expended by petitioner for pumping the water into holding tanks for eventual distribution to water towers involves the delivery of a finished product. The water is processed completely after the chlorine is added, and the electricity used after that time is merely preserving the water and distributing it.

We conclude, as did the agency, in light of the previously cited cases and agency rules that step five after chlorination and step six do not constitute processing under Iowa Code section 422.42(3).

III. *Disposition.* In conclusion, we hold that "processing" when used in relation to section 422.42(3) refers to those activities which are an integral part of the production of a product, but does not include ancillary activities such as storage or transporation before or after production. The agency committed no error. Accordingly, based on the refund claim as submitted by the taxpayer to the department, we affirm the district court and uphold the decision of the department.

AFFIRMED.