MISSISSIPPI VALLEY MILK PRO-DUCERS ASSOCIATION, d/b/a Swiss Valley Farms, Petitioner-Appellant,

v.

IOWA DEPARTMENT OF REVENUE, Respondent/Cross-Appellant.

No. 85–274.

Court of Appeals of Iowa.

March 31, 1986.

James W. Hall and Joe H. Harris of Hall & Irvine, Cedar Rapids, for petitioner-appellant.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Sherie Barnett, Asst. Atty. Gen., for respondent/cross-appellant.

Heard by OXBERGER, C.J., and SNELL and SCHLEGEL, JJ.

SNELL, Judge.

Petitioner Mississippi Valley Milk Producers Association d/b/a Swiss Valley Farms (hereinafter Swiss Valley) operates a plant in Cedar Rapids, Iowa, where milk and non-dairy breakfast drink products are prepared for market. The plant produces and distributes homogenized milk, 2% milk, 1% milk, skim milk, chocolate milk of all grades, half and half, cream, and breakfast drinks.

Swiss Valley receives raw milk from farms transported by either tank truck or pump-over tankers. The raw milk is cooled in the tankers to 40 degrees. Upon arrival at the plant, the raw milk is weighed and then pumped from the tankers into holding silos. The empty trucks are washed, sanitized, and sealed before leaving the plant. The milk is stored in the silos, cooled four to six degrees, and agitated until it is pumped to the pasteurization area. The agitation prevents the separation of cream and milk. The milk is eventually pumped from the holding silos to the pasteurizing area where it is heated to 157 degrees. After heating, the milk is cooled and pumped into holding tanks where it is agitated and cooled further. It is at this point, after pasteurization and homogenization, that the milk is ready for human consumption. From the holding tanks, the milk is pumped into the filling area for bottling in sealed containers. The packaged milk is placed in cases which are moved by floor conveyor to a cooling area. The milk is stored and cooled at 40 degrees. The cases are eventually loaded onto trucks for distribution to retail outlets.

Swiss Valley also mixes and distributes non-dairy breakfast drinks. The frozen concentrates and other ingredients are stored at the plant until thawed and mixed with a small amount of water to form "slurry." The slurry is pumped into a large tank where more water is added. The breakfast drink is then heated, cooled, and packaged in the pasteurization and filling areas in the same manner as the milk.

The containers used to package the beverages are formed at the plant. Two types of bottles are manufactured—plastic jugs and knock-down paper cartons. The materials to be formed are stored in a controlled environment until needed. Plastic pellets are heated, compressed, liquefied, and formed into jugs. The jugs are then cooled, labeled, and filled. The cartons are purchased by Swiss Valley as cardboard covered with plastic coating. The cartons are heated before they are placed in the filling machines.

Other activities at the plant include unloading, unstacking, and washing empty reusable cases. Loaded trucks may remain at the plant for some time, and the trucks may be cooled to preserve the products or heated to prevent freezing, depending upon the season. This temperature control is regulated by a series of electrical hookups at the plant.

The plant also has its own laboratory facility. Samples are taken of the milk and tested to insure that the milk is not contaminated. The actual sample is not returned to the product. However, depending upon the test results, various procedures may be performed on the milk, or a whole load of milk could be pulled from production.

For health purposes, the plant is obligated to maintain a high level of cleanliness. There is equipment at each stage of production that is used to clean the machinery employed in actual manufacture. Most of the equipment is cleaned in place. Water and chemicals are pumped through the pipes used to transport the raw products both before and after the pipes are used. No raw product is in the system when cleaning takes place, and the cleaning does not alter the raw product.

The plant has a regular office area where office procedures are performed. The plant also has a building used for maintenance of distribution trucks, and a deep well pump used to pump water for cooling and cleaning.

Swiss Valley purchased the Cedar Rapids facility in June of 1978. Between the time of purchase and November of 1980, Swiss Valley claimed no sales tax exemption for the purchase of electricity. Iowa Electric Light and Power Company of Cedar Rapids (hereinafter Iowa Electric) informed Swiss Valley in November of 1980 that no exemption certificate for its plant was on file. At this point, Swiss Valley filed an exemption certificate with Iowa Electric claiming an 88.13% exemption for electricity used in processing. Swiss Valley based its percentage determination on Iowa Electric's interpretation of what constituted "processing." Swiss Valley also filed a claim for a

refund with the Iowa Department of Revenue (hereinafter Department) for sales tax paid from June 1978 through November 1980.

The Department auditors determined only 66% of Swiss Valley's electricity purchases were exempt. Swiss Valley filed a formal protest with the Department claiming that 100% of its purchases of electricity were exempt from sales tax, or, in the alternative, at least 88.13%. The auditors again examined Swiss Valley's electrical usage and determined only 61% of its electricity purchases were exempt. Contested case proceedings were initiated and the Department hearing officer found that 61.87% of Swiss Valley's electrical purchases were exempt from sales tax.

Swiss Valley filed a petition for judicial review of the agency's decision. The district court affirmed the agency decision except that it also found that the electricity used by Swiss Valley in its laboratory area was used in processing and, therefore, exempt from sales tax.

Swiss Valley has appealed and the Department has cross-appealed. Swiss Valley contends that 100% or, alternatively, 88.13% of its electricity purchases are used in processing. It argues that all of its purchases of electricity were used either directly or indirectly in the processing of raw milk and raw ingredients into pasteurized milk and breakfast drink. In the alternative, Swiss Valley argues that its only non-processing purchases are for electricity used in the office, for heating and air conditioning, lights, fans, water coolers, and miscellaneous tooling. The items which Swiss Valley contends should be included in processing but that the agency excluded are as follows: unit heaters for milk cartons and loading areas, laboratory devices, bug lights, high pressure washer for trucks, battery chargers for fork lift and transporter, electric door openers, loading dock heaters, conveyor system, ammonia evaporation coolers and cooling fans, freezers and refrigerator for storage of dairy products, raw milk pump, water heater for sanitizing production equipment, raw milk agitators, ammonia compressor, water booster pumps, freight elevator, and electrical hookups for regulation of truck temperature. The Department contends that the trial court erred in finding that Swiss Valley's laboratory electrical usage is used in processing.

■ **Scope of Review.** We review the decision of the district court, also rendered in an appellate capacity, and determine whether the district court correctly applied the law. "In order to make that determination, this court applies the standards of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court." *Jackson County Public Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429–30 (Iowa 1979).

■ Iowa Code section 17A.19(8)(f) (1985) provides that in a contested case the court shall grant relief from an agency decision which is "unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole." Evidence is substantial when a reasonable person would accept it as adequate to reach a conclusion. *Peoples Memorial Hospital v. Iowa Civil Rights Comm.*, 322 N.W.2d 87, 91 (Iowa 1982). The question is not whether the evidence might support a different finding, but whether the evidence supports the findings actually made. *Ward v. Iowa Dept. of Transportation*, 304 N.W.2d 236, 237–38 (Iowa 1981). The fact that two inconsistent conclusions can be drawn from the evidence does not permit us to make a finding inconsistent with the agency's findings so long as there is substantial evidence to support the agency's decision. *Peoples*, 322 N.W.2d at 91.

■ Special additional principles apply in tax cases. "Statutes which impose taxes are construed liberally in favor of the taxpayer and strictly against the taxing body. It must appear from the language of a statute that the tax assessed against the taxpayer was clearly intended." *Iowa Auto Dealers v. Iowa Dept. of Revenue,*

301 N.W.2d 760, 762 (Iowa 1981). However, when the taxpayer relies on a statutory exemption, the exemption is construed strictly against the taxpayer and liberally in favor of the taxing body. *Id.* Doubts are resolved against exemption.

**Processing Exemption.** The determinative question is whether electricity purchased by Swiss Valley was used in processing tangible personal property for ultimate sale to consumers. If so, Swiss Valley is entitled to a refund for sales tax paid for electrical consumption.

Iowa Code section 422.43 (1981) imposes a sales tax upon the gross receipts from retail sales of gas and electricity:

*There is hereby imposed a tax of three percent* upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this division, sold at retail in the state to consumers or users; a like rate of tax *upon the gross receipts from the sales, furnishing or service of gas, electricity, water, heat, and communication services,* including the gross receipts from such sales by any municipal corporation furnishing gas, electricity, water, heat, and communication services to the public in its proprietary capacity, *except as otherwise provided in this division, when sold at retail in the state to consumers or users;....* (emphasis added)

Iowa Code section 422.42(3) (1981) by definition exempts gas and electricity used in the processing of tangible personal property from sales at retail:

3. *"Retail sale"* or *"sale at retail"* means the sale to a consumer or to any person for any purpose, other than for *processing* or for resale of tangible personal property or taxable services, or for resale of tangible personal property in connection with taxable services, *and the sale of gas, electricity, water, and communication service to retail consumers or users, but does not include* commercial fertilizer or agricultural limestone or materials, but not tools or equipment, which are to be used in disease control,

weed control, insect control or health promotion of plants or livestock produced as part of agricultural production for market, or *electricity or steam or any taxable service when purchased and used in the processing of tangible personal property intended to be sold ultimately at retail.* (emphasis added)

"Processing" is also defined in subsection 3:

Tangible personal property is sold for processing within the meaning of this subsection only when it is intended that such property shall by means of fabrication, compounding, manufacturing, or germination become an integral part of other tangible personal property intended to be sold ultimately at retail or shall be consumed as fuel in creating heat, power, or steam for processing....

Iowa Code § 422.42(3) (1981).

■ The Department of Revenue has promulgated rules which further elaborate upon what comes within the scope of the processing exemption. An agency rule has the binding effect of law. *Young Plumbing Co. v. Iowa,* 276 N.W.2d 377, 382 (Iowa 1979). Therefore, these departmental rules guide our interpretation and implementation of Iowa Code section 422.

**Fuel used in processing—when exempt.** Receipts from the sale of tangible personal property which is to be consumed as fuel in creating power, heat or steam for processing, including grain drying or for generating electric current, shall be exempt from sales tax.

The exemption provided in the case of tangible property consumed as fuel in creating heat applies only when such heat is directly applied in the actual processing of tangible personal property intended to be sold ultimately at retail, as distinguished from heat which is used for the purpose of heating buildings, whether such buildings be manufacturing or processing plants, warehouses or offices. *Chicago, B. & Q.R. Co. v. Iowa State Tax Commission,* 1966, 259 Iowa 178, 142 N.W.2d 407.

Fuel used in processing is exempt to creameries, dairies or ice cream factories only to the extent that such fuel or electricity, as the case may be, is used in the actual processing of the finished product. This does not include fuel used for storage after the manufacturing process is completed.

This rule is intended to implement section 422.42(3), The Code.

730 Iowa Admin.Code § 517.2(422) (1981).

**Electricity or steam used in processing.** Receipts from the sale of electricity or steam to be used in the processing of tangible personal property intended to be sold ultimately at retail shall be exempt from sales tax.

The exemption provided in the case of electricity or steam applies only upon the gross receipts from the sale of electricity or steam when such energy shall be consumed as power or used in the actual processing of tangible personal property intended to be sold ultimately at retail, as distinguished from electricity or steam which is consumed for the purpose of lighting, ventilating or heating of manufacturing plants, warehouses or offices....

a. Electricity used in the freezing of tangible personal property, ultimately to be sold at retail, to make such property marketable would be exempt from the imposition of tax. *Fischer Artificial Ice & Cold Storage Company v. Iowa State Tax Commission,* 1957, 248 Iowa 497, 81 N.W.2d 437.

b. Electricity used merely in the refrigeration or the holding of tangible personal property for the purpose of preventing spoilage and to preserve the property in its present state would not be "used in processing" and, therefore, would be subject to the imposition of the tax. *Fischer Artificial Ice & Cold Storage Company v. Iowa State Tax Commission,* 1957, 248 Iowa 497, 81 N.W.2d 437.

730 Iowa Admin.Code § 17.3 (422,423) (1981).

**Processing.** For the purpose of these rules, "processing" means an operation or series of operations whereby tangible personal property is subjected to some special treatment by artificial or natural means which changes its form, context, or condition, and results in marketable tangible personal property. These operations are commonly associated with fabricating, compounding, germinating, or manufacturing. *Linwood Stone Products Co. v. State Department of Revenue,* 175 N.W.2d 393 (Ia. 1970).

This rule is intended to implement sections 422.42 and 423.1 of the Code.

730 Iowa Admin.Code § 18.29 (422,423) (1981). The Iowa Supreme Court has also stated that "[p]rocessing essentially connotes the transformation of raw material into a finished product" in marketable form. *Iowa Auto,* 301 N.W.2d at 764. Operations upon products which merely enhance their sale value and make them more attractive to consumers are not processing. *Id.*

The purpose of the processing exemption was enunciated by the Iowa Supreme Court in *Fischer.* "Courts have frequently pointed out that an important reason for processing exemptions is that the cost of processing is included in the price of the product ultimately sold at retail, thus increasing the sales tax the consumer is required to pay. The purpose of this exemption may well have been to avoid double taxation and prevent an increase in the ultimate price to the consumer. After all it is he who bears the whole tax whether computed on the price he pays or included therein." *Fischer,* 248 Iowa at 505, 81 N.W.2d at 442.

As evidenced by the Department's rules, Iowa case law has applied the definition of processing in varying contexts and either accepted or rejected specific activities as processing. In Iowa, processing includes manufacturing ice, refrigerating cheese to age it from "green" to edible, refrigerating eggs to change their flavor, pasteurizing and subsequent refrigeration of milk, hard freezing of meat and butter for appropriate aging, canning vegetables, and cooking

foodstuffs. *Fischer,* 248 Iowa at 500–05, 81 N.W.2d at 439–41. Processing also includes the crushing of flat rock limestones, conveying it to screens where it is graded for size, and treating it in kilns. *Linwood,* 175 N.W.2d at 394. However, it is not processing when used cars are repaired, *Iowa Auto,* 301 N.W.2d at 764; when records are placed in a juke box, *Ramco, Inc. v. Directors, Dept. of Revenue,* 248 N.W.2d 122, 123 (Iowa 1976); or when a retail grocer refrigerates perishable foods merely to preserve them in substantially the same condition, *Fischer,* 248 Iowa at 504, 81 N.W.2d at 441.

Swiss Valley initially contends that all electrical usage by its plant should be exempt from sales tax because all of its electricity purchases are essential and necessary in order for Swiss Valley to manufacture its milk and breakfast drink products. Swiss Valley asserts that the "use" required of electricity under section 422.42(3) need only be "use" in *general business activity,* all of which activity taken as a whole results in tangible property being processed. Therefore, Swiss Valley argues that a taxpayer should not have to show that each individual use of electricity by the business is directly involved in some change in the form, context, or condition of the tangible personal property at issue.

Swiss Valley's argument is not in accordance with the administrative rules we have cited above nor with judicial application of the processing exemption. The agency and our courts have consistently examined each piece of equipment used in a business to determine whether it is actually involved in processing the tangible personal property in issue. *See e.g. Fischer,* 248 Iowa at 503–504, 81 N.W.2d at 441–442 (hard-freezing of meat, eggs, cheese, and butter is processing while cold-storage of the same products is not processing); *Linwood,* 175 N.W.2d at 395–396 (crushing limestone is processing but severing and transporting the stone from its natural bed to crushing machine is not processing); *Hy-Vee Food Stores, Inc. v. Iowa Dept. of Revenue,* 379 N.W.2d 37, 42–43 (Iowa Ct.App.1985) (slicing and cutting equipment is used in pro-

cessing while coolers, scales, wrappers and sanitation equipment are not used in processing).

We recognize that, of course, all of Swiss Valley's equipment is deemed essential to its business. However, the concern for purposes of the processing exemption is which of Swiss Valley's operations can be characterized as changing the structure of the products which it manufactures. Regardless of how essential an activity is to the operation of Swiss Valley's business, if it does not change the form, context, or condition of the milk or breakfast drink being produced, it cannot constitute processing within the meaning of section 422.-42(3). We therefore, must examine each disputed operation or piece of equipment within Swiss Valley's plant to determine whether it can be characterized as using electricity in "processing".

Swiss Valley argues that the raw milk agitators and raw milk pump support a processing exemption. The Iowa Supreme Court's analysis in *Linwood* and most recently in *Southern Sioux County Rural Water System, Inc. v. Iowa Department of Revenue,* 383 N.W.2d 585 (Iowa Sup.Ct. 1986), thwarts Swiss Valley's, argument. In *Linwood,* an analogous situation involving a limestone quarry was presented. In the quarry operations, limestone was dynamited from its natural bed, and the solid flat rocks were loaded by diesel-powered loaders onto diesel-powered trucks which hauled the rock to a crusher. The court found that the form, context, or condition of the limestone rock was not changed until it reached the crusher. *Linwood,* 175 N.W.2d at 395. Because the severance of the stone and its conveyance to the crusher preceded the processing operation, the fuel consumed by the equipment used in these preliminary mining operations was not exempt from sales tax. *Id.* at 395–396. *Linwood* emphasizes the fact that activities which are vital to a business' operation, yet preliminary and preparatory to actual processing, do not fall within the processing exemption of chapter 422.

Likewise, in *Southern Sioux* a water treatment plant contended that the electricity it used to transport water from wells to the plant constituted processing. The Iowa Supreme Court found that "the electricity used to pump water drawn from its wells to the treatment plant [was] analogous to the fuel used in *Linwood* to convey the extracted limestone from the mine to a truck which then transported the rock to a crusher machine." *Southern Sioux*, at 588. The court held that this electricity was not used in processing because it merely transported raw material prior to actual processing and did not effect a change in the form, context, or condition of the water. *Id.* at 588.

■ In the case at bar, the form, context, or condition of the raw milk is not changed until it is heated to 157 degrees in the pasteurization area. Swiss Valley's raw milk agitator and pump are not used in processing because these operations precede pasteurization. Therefore, Swiss Valley is not entitled to a refund for sales tax paid on electricity consumption by these preliminary operations.

We consider in one group, Swiss Valley's equipment which does not actually operate upon or come into contact with the milk product itself. This equipment includes the battery chargers for transporter, forklift, and truck freight elevator, bug lights, high pressure truck washer, electric door openers, sanitation equipment, loading dock heaters, conveyor systems, and sump pumps. As aforementioned, the fact that this equipment is necessary in Swiss Valley's business does not make its operation "processing" within the meaning of chapter 422. This equipment does not change the form, context or condition of Swiss Valley's milk product. Nor does it fabricate, compound or germinate this product. We conclude that these pieces of equipment are not used in processing tangible personal property. Therefore, the electricity used in operating this equipment is not exempt from sales tax.

Swiss Valley also contends that its refrigeration system supports a processing exemption. Swiss Valley stores butter, cheese, and other dairy products for later distribution which are not manufactured in its plant. Prior to distribution, these products are refrigerated to prevent contamination and spoilage.

A line was drawn in the context of refrigeration by Iowa case law which is now set forth in a Department rule. Electricity used for refrigeration of food products to preserve them in substantially the same condition and prevent spoilage is not exempt from sales tax, while electricity used for cold storage aging of meat, butter, eggs, and cheese is exempt from sales tax. *Fischer*, 248 Iowa at 503–04, 81 N.W.2d at 441; 730 Iowa Admin.Code § 17.2(422) (1981).

Accordingly, Swiss Valley's refrigeration system is not used in processing because it preserves dairy products in their present state and prevents spoilage. Therefore, Swiss Valley is not entitled to a refund for sales tax paid on electricity consumption by its refrigeration system.

Swiss Valley also has a cooling area where its milk product is conveyed after it is sealed in containers. The milk is refrigerated in this area until it can be loaded into trucks for distribution. Swiss Valley argues that the conveyor system, ammonia compressor, and evaporator fans which operate in this area are used in processing.

Swiss Valley has set forth no evidence that this equipment further fabricates, compounds, or germinates the milk product. No change in the form, context, or condition of the milk occurs here. Rather, the milk is preserved in substantially the same condition and protected from spoilage. Therefore, Swiss Valley is not entitled to a refund for sales tax paid on electricity consumption by the equipment in the cooling area.

The Department contends that the devices used in Swiss Valley's laboratory to test the bacteria or butter fat levels of milk samples are not involved in processing. The district court found to the contrary. The court concluded that because the labo-

ratory tests *can* result in a change in the form, context, or condition of Swiss Valley's products (such as the addition or deletion of cream) the laboratory equipment is a part of processing in Swiss Valley's plant.

While the results of Swiss Valley's tests may require further alterations of its milk product before distribution, the tests do not act upon the milk in any fashion. The samples tested are not even returned to the product. The laboratory equipment itself does not change the form, context or condition of the milk. The fact that test results influence what further operations Swiss Valley might perform upon its product is not sufficient to support a processing exemption. The district court's finding to the contrary is accordingly reversed.

The Department concedes that the electricity consumed by the unit heaters which heat containers for proper sealing is exempt from tax. The district court mistakenly addressed these items although their processing usage was not disputed by the parties. The electrical usage of the 5,000 watt unit heater and the 360 watt unit heaters used to heat containers for proper sealing is accordingly tax exempt. Therefore, the district court's holding is reversed in this regard.

REVERSED IN PART, AFFIRMED IN PART.