**HEARTLAND LYSINE, INC., Appellant,**

v.

**STATE OF IOWA, DEPARTMENT OF REVENUE AND FINANCE,**
Appellee.

No. 92–430.

Supreme Court of Iowa.

July 21, 1993.

David J. Hester and Gayla R. Harrison of Johnson, Hester & Walter, Ottumwa, for appellant.

Bonnie J. Campbell, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Valencia Voyd McCown, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

This is a taxpayer's challenge to the imposition of use taxes on electrical equipment purchased for its plant in Eddyville, Iowa. The taxpayer claims that the equipment taxed is essential to the processing of its product and, therefore, exempt under Iowa Code section 423.4 (1987). The dis-

trict court upheld the tax on judicial review. We affirm.

Appellant Heartland Lysine, Inc. is one of only two facilities in the country manufacturing lysine, an amino acid used as an additive in swine and poultry feed. Heartland's modern facility produces the lysine in a two-stage process. First, a small quantity of frozen microorganisms imported from Japan is thawed and multiplied in a three-story fermentation tank. When ready, this organic broth is pumped through an absorption system which extracts and purifies the lysine molecules utilizing an ionic exchange process. The production of one batch of lysine takes approximately three days and requires constant monitoring to ensure complete environmental control over the sensitive fermentation and purification processes.

Lysine production requires large quantities of electricity to maintain the proper temperature for fermentation and to power large agitators, pumps, and other equipment essential to the ionization process. Iowa Southern Utilities supplies two electrical feedlines to the facility, each furnishing power at 13,200 volts. The equipment purchased by Heartland to access and modulate this energy source are the focus of this appeal.

Heartland installed switch gear to give it the ability to choose between utility company lines and to keep one line in reserve in the event of emergency. Because the voltage coming into the facility is much greater than needed for Heartland's equipment, it installed transformers to step the voltage down to the 4160 and 160 volt levels it can use. The company also installed breakers to protect against any overcurrent situation which could disrupt the sensitive fermentation process.

For the period July 1, 1984, through December 31, 1987, the Iowa Department of Revenue assessed Heartland $56,834.79 plus penalty and interest for use tax applicable to the switch gear, breakers and transformers. Heartland filed a protest, claiming the equipment is directly used in the production of lysine and therefore exempt from tax under Iowa Code section 423.4. It claimed alternatively that the equipment qualified for exemption under a "new jobs training agreement" approved by the department in accordance with Iowa Code section 422.45(27). In response the department contended that the regulation of electricity by means of switch gear, transformers and breakers occurs *before* processing and not *in* processing. Therefore, it resisted Heartland's claim of exemption.

The protest came on for hearing before an administrative law judge. The ALJ ruled that the electrical equipment, although essential to Heartland's operation, was installed to regulate the flow of electricity throughout the plant, not to change the form or condition of the lysine. The ALJ noted that electricity used in production is exempt from sales and use tax by statute and department rule. But the exemption sought here—for equipment used to regulate electricity—is far removed from the lysine production itself, the judge ruled, and is therefore taxable to the company.

Heartland petitioned for judicial review. The district court affirmed the agency, concluding there was substantial evidentiary support for the agency's finding that the disputed items do not control the lysine processing equipment but only regulate and control the power supply to the plant. This appeal followed.

I. On appeal our task is to determine whether the district court correctly applied the law. Iowa Code § 17A.19(8). We are limited to the record made before the agency. *Maschino v. Geo. A. Hormel & Co.*, 372 N.W.2d 256, 258 (Iowa 1985). We give weight to the agency's interpretation of statutes, but we are not bound by the agency's construction. *Ballstadt v. Iowa Dep't of Revenue*, 368 N.W.2d 147, 148 (Iowa 1985).

Tax exemption statutes are construed strictly, with all doubts resolved in favor of taxation. *Mississippi Valley Milk Producers Ass'n v. Iowa Dep't of Revenue*, 387 N.W.2d 611, 615 (Iowa App.1986). The party seeking the exemption has the bur-

den of proving its entitlement. *North Star Steel Co. v. Iowa Dep't of Revenue,* 380 N.W.2d 677, 680 (Iowa 1986).

■ We observed in *North Star Steel* that the propriety of a use tax assessment or exemption turns largely on the specific use made of the property. *Id.* This is essentially a fact-based inquiry, and the decision of the agency is binding on us if supported by substantial evidence in the record. *Sallis v. Employment Appeal Bd.,* 437 N.W.2d 895, 896 (Iowa 1989).

II. Iowa Code section 422.42(3), made applicable to use tax by Iowa Code section 423.4, exempts from taxation tangible personal property sold for processing. The statute provides that property is sold for processing

> only when it is intended that the property will, by means of fabrication, compounding, manufacturing, or germination become an integral part of other tangible personal property intended to be sold ultimately at retail, or will be consumed as fuel in creating heat, power, or steam for processing....

Iowa Code § 422.42(3). Iowa Department of Revenue rule 701–18.29(1) defines processing as

> an operation or a series of operations whereby tangible personal property is subjected to some special treatment by artificial or natural means which changes its form, context, or condition, and results in marketable tangible personal property. These operations are commonly associated with fabricating, compounding, germinating, or manufacturing.

The onset of processing is defined by the department this way:

> Processing begins when the "form, context, or condition" of tangible personal property is changed with the intent of eventually transforming the property into a saleable finished product.

701 Iowa Admin.Code 18.29(2) (quoting *Linwood Stone Prods. Co. v. State Dep't of Revenue,* 175 N.W.2d 393 (Iowa 1970)).

Underlying the processing exemption is the recognition that the cost of production is included in the retail price of any manufactured product, subject to tax upon its sale. *Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Comm'n,* 248 Iowa 497, 505, 81 N.W.2d 437, 442 (1957). The exemption avoids double taxation and the higher consumer prices which would inevitably result were the exemption not available to the manufacturer. *Id.,* 81 N.W.2d at 442.

Not every aspect of manufacturing qualifies for the exemption, however, and a number of decisions have examined where taxable functions begin and end. In *Linwood Stone Products Co. v. State Department of Revenue,* 175 N.W.2d 393 (Iowa 1970), the taxpayer sought a sales tax exemption for fuel used to transport mined limestone blocks to stone crushing machines, claiming the conveyance of raw material from one part of the facility to another was an integral part of processing the stone products. The department disagreed, contending that no change in the materials occurred until the stone was placed in the crusher and that the mining and blasting of the stone was merely "preliminary and preparatory" and not processing as contemplated in the use tax exemption statute. *Id.* at 394. We agreed, noting that the customary definition of "processing" is "an operation whereby raw material is subjected to some special treatment by artificial or natural means which changes its form, context, or condition, and results in marketable tangible personal property." *Id.* at 395; *see* 701 Iowa Admin.Code 18.29(2) (codifying *Linwood* rule).

We further refined the distinction between transportation and processing in *Southern Sioux County Rural Water System v. Iowa Department of Revenue,* 383 N.W.2d 585 (Iowa 1986). There the taxpayer sought a refund for sales tax paid on the purchase of electricity used in its water treatment facility. Affirming the department's denial of exemption for pretreatment and posttreatment drawing and pumping of water, we held that

> "processing" when used in relation to section 422.42(3) refers to those activities

which are an integral part of the production of a product, but does not include ancillary activities such as storage or transportation before or after production.

*Id.* at 589.

In *North Star Steel Co. v. Iowa Department of Revenue,* 380 N.W.2d 677, the department and taxpayer tangled over the exempt status of carbon electrodes and refractory materials used in the manufacture of steel. Because the carbon electrodes were in fact consumed in the manufacturing process, we ruled as a matter of law that North Star was entitled to a use tax exemption on their purchase. *Id.* at 683. Likewise, we found that the refractory materials lining the furnace, which are ultimately consumed in the molten "bath" and become steel by-products, necessarily satisfied the *Linwood* rule. *Id.*

■ III. Heartland relies on *Linwood, North Star Steel,* and *Sioux County Water* to support its contention that the switch gear, transformers, and breakers are so integral to the successful production of lysine that the company is entitled to the processing exemption it claims. Without the switch gear and breakers, Heartland asserts, it could not ensure twenty-four-hour control over the sensitive environment required to nurture fermentation of the microorganisms. Without transformers, it claims, the electricity so essential to production could not be obtained in the form needed to power compressors and agitators to cool and stir the organic broth. Heartland argues that the electrical equipment is not ancillary but essential to the manufacturing process itself; nor is the equipment merely used to transport or store the manufactured product.

Heartland's argument overlooks the significant distinction between this case and those in which the assertedly exempt property is consumed in the processing. *Cf.*

*Linwood,* 175 N.W.2d at 393 (fuel used in trucks); *Sioux County Water,* 383 N.W.2d at 588 (electricity used to pump water); *North Star Steel,* 380 N.W.2d at 683 (electrodes used in steel making). By its terms, the statutory exemption applies to property that "become[s] an integral part of other tangible personal property ... or will be consumed as fuel." Iowa Code § 422.42(3). Heartland's electrical equipment clearly is not consumed as fuel. Nor does it become an integral part of the lysine. Because the disputed items do not come within the statutory exemption, the district court correctly upheld the agency's refusal to grant it on this ground.

■ IV. Heartland also claims a use tax exemption based on Iowa Code section 422.45(27). This section provides an exemption, for qualifying equipment, to

an industry which has entered into an agreement under chapter 280B [a new jobs training agreement with an area community college] ... if the following conditions are met:

a. The industrial machinery, equipment ... shall be directly and primarily used in the manner described in section 428.20 in processing tangible personal property.

Iowa Code § 422.45(27).[1]

The record reveals that Heartland entered into an agreement with a local community college to train students in its new facility. After reviewing the preliminary agreement, the department notified Heartland by letter that the arrangement was acceptable and would enable Heartland to purchase "qualifying industrial machinery" free of sales tax.

The department later determined that the switch gear, transformers, and breakers did not qualify for this exemption because they are not "directly or primarily" used in processing lysine. The district

---

1. Iowa Code § 428.20 provides:
   Any person, firm, or corporation who purchases, receives, or holds personal property of any description for the purpose of adding to the value thereof by any process of manufacturing, refining, purifying, combining of different materials, or by the packing of meats, with a view to selling the same for gain or profit, shall be deemed a manufacturer for the purposes of this title, and shall list such property for taxation.

court upheld this finding on judicial review. Like the district court, we believe the record furnishes substantial support for the department's ruling.

It is undisputed that the switch gear and transformers regulate the flow of electricity into the plant. This activity, in order to be useful, necessarily occurs before the electricity reaches the area in the plant in which lysine is processed. The equipment itself is located outside the plant, in an area separate from the production building. The electrical current, stepped down to the necessary voltage, is—of course—conveyed to the lysine production equipment by electrical cables emanating from the transformers. But neither those cables nor the current itself is at issue on this appeal. At issue is equipment that regulates electricity coming into the plant. Although crucial to the plant's successful operation, this equipment must—by its very nature—operate before lysine production begins.

Because the switch gear, transformers and breakers function in advance of the lysine production, the agency determined that their use falls outside the exemption for operations that change the "form, context, or condition" of tangible personal property "commonly associated with fabricating, compounding, germinating, or manufacturing." 701 Iowa Admin.Code 18.-29(1); *Linwood*, 175 N.W.2d at 395. We agree. Although vital to the lysine production, the equipment's function is preliminary to the actual processing. *Cf. Mississippi Valley Milk Producers*, 387 N.W.2d at 618 (because condition of milk not changed until heat applied in pasteurization process, energy used in preliminary pump and agitator processes not subject to use tax exemption).

The record makes clear that microprocessors—not switch gear and other electrical regulating equipment—directly perform the manufacturing functions contemplated by section 428.20. Since the electrical equipment claimed exempt by Heartland is not used in processing, it does not qualify for the exemption permitted under section 422.45(7). The district court, and the agency before it, were correct in so ruling.

**AFFIRMED.**