**The DIAL CORPORATION, Appellant,**

v.

**IOWA DEPARTMENT OF REVENUE and Finance, Appellee.**

No. 99–1393.

Supreme Court of Iowa.

Oct. 10, 2001.

* Senior Judge assigned by order pursuant to Iowa Code section 602.9206 (2001).

Mark R. Schuling of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Harry M. Griger, Special Assistant Attorney General and Marcia Mason, Assistant Attorney General, for appellee.

NEUMAN, Justice.

This appeal by The Dial Corporation concerns sales and use taxes imposed by the Iowa Department of Revenue for the period January 1, 1989 through September 3, 1993. The district court, on review of agency action under Iowa Code chapter 17A (1999), affirmed most but not all of the department's assessment. On the company's appeal, and the department's cross-appeal, we now affirm in part, reverse in part, and remand for a corrected judgment.

## I. Background Facts and Proceedings.

Petitioner, The Dial Corporation, is an Arizona-based company that owns a food processing plant near Ft. Madison, Iowa, in Lee County. Among the foods produced at this plant are microwaveable meals called "Lunch Buckets." A Lunch Bucket consists of a stew-like product poured into a small plastic container, sealed with an aluminum lid, pressure cooked, labeled, and then covered with a plastic lid. After the plastic lid is placed on the container, a conveyor moves the Lunch Bucket to machinery that places a cardboard box around groups of twelve Lunch Buckets. An electrical substation located near the machinery furnishes electrical power for this case-packing equipment. Because the twelve-pack box is equipped with special perforations, retailers have the option of using the box as a display case. The Lunch Bucket is designed so that a consumer purchasing the product may remove its aluminum lid, replace the plastic lid on the container, and heat the product in a microwave oven.

In June 1993, the department contacted Dial concerning an impending tax audit of its Lunch Bucket operations. Upon the audit's completion, Dial received two notices of tax assessment, one for local option sales taxes in the sum of $7723.56 and another for consumer use tax totaling $221,160.87. Dial contested the assessments in a hearing before an administrative law judge (ALJ). At issue were exemptions claimed by Dial for machinery and equipment used in processing and packaging the Lunch Buckets, a dispute over two accounts included in the auditing sample, whether the statute of limitations barred the assessment on a portion of the tax period because the waiver form furnished by the department was incomplete, and whether penalty, interest, and local option sales tax payments were properly assessed. The department prevailed on each contested item.

On judicial review of the agency's action, the district court agreed with the ALJ on all but the sampling issue. Dial appealed, and the department cross-appealed. Further facts will be detailed as they pertain to the issues on review.

## II. Scope of Review.

On appeal from judicial review of agency action, our review is for the correction of errors at law. Iowa Code § 17A.19(8). We give weight to the agency's interpretation of pertinent statutes, but we are not bound by those determinations. *Heartland Lysine, Inc. v. Iowa Dep't of Revenue & Fin.*, 503 N.W.2d 587, 588 (Iowa 1993). Because the propriety of a use tax assessment or exemption is a fact-intensive inquiry, the agency's deci-

sion is binding on us if supported by substantial evidence. *Id.* at 589.

 "Tax exemption statutes are construed strictly, with all doubts resolved in favor of taxation." *Id.* at 588 (citation omitted). Thus a party seeking an exemption bears the burden of proving its entitlement. *Id.*

### III. Issues on Appeal and Cross Appeal.

██ *A. Statute of limitations.* Dial asserts that Iowa Code section 422.54(1) (1997),[1] the pertinent statute of limitations for its audit, bars the department's assessment of taxes for the period January 1, 1989 through March 31, 1991. The department counters, and the ALJ and district court found, that Dial executed extension agreements waiving the limitation period. Dial argues on appeal that the agreements prepared by the department for its signature did not comply with the waiver statute, section 422.54(3), and were, therefore, invalid.

The governing statute, Iowa Code section 422.54(1), provides:

As soon as practicable after a return is filed and *in any event within five years after the return is filed,* the department shall examine it, assess and determine the tax due if the return is found to be incorrect, and give notice to the taxpayer of the assessment and determination as provided in subsection 2.[2]

(Emphasis added.) According to the highlighted language, a tax return more than five years old may not be reviewed as part of the audit. However, the limitation may be waived pursuant to section 422.54(3), which states:

The five-year period of limitation provided in subsection 1 may be extended by a taxpayer by signing a waiver agreement form to be provided by the department. The agreement shall stipulate the period of extension and the tax period to which the extension applies.

The record reveals that Dial and the department entered into three extension agreements, the first in June 1994, the second in January 1995, and the third in March 1996. Each agreement was on a preprinted form, prepared by the department for Dial's signature, with blanks completed specific to Dial's case. On each agreement, however, the line for the ending date of the extension was left blank. Following the line for the extension expiration date, the preprinted form stated, "This agreement ends on the earlier of the above expiration date or the assessment of an increase of the above tax."

Dial contends that because the waivers signed by its officers and the department contained no stipulated expiration dates, the waivers did not comply with section 422.54(3) and are, accordingly, void. The ALJ and district court rejected that argument, and so do we. First of all, each waiver *does* contain an expiration date— the date of the tax assessment. Second, the record supports the Department's claim that the open-ended extensions were agreed upon by Dial and actually inured to its benefit, rather than its detriment.

 Dial argues that the department was obligated to insert an expiration date on the waivers it provided and claims that the department's auditor, Arthur Hagemeier, used the blank waivers to obtain un-

---

1. Unless otherwise indicated, all further references to the Iowa Code shall be to the 1997 edition.

2. The statute has since been amended to allow a three-year statute of limitations. *See* 1999 Iowa Acts ch. 156, § 3 (codified at Iowa Code § 422.54(1) (2001)).

limited time period extensions. But Hagemeier's testimony reveals a less sinister motive. He did not put a date in the agreements because he believed that it was up to the taxpayer to specify the ending date. His belief is supported by the language of section 422.54(3), which gives *the taxpayer*, not the department, the right to an extension. The taxpayer is essentially permitted unlimited time to furnish the records it believes the auditor should consider. Under an indefinite extension, Hagemeier testified, the audit ends whenever the auditor gets the information needed to finish it in such a way that the auditor and taxpayer can either agree on everything or "agree to disagree." So also, a taxpayer may insist at any time that the audit be concluded, in which case the auditor wraps up the remaining work and sends the audit to the department for assessment.

As found by the district court, the information provided by Dial after the auditor left Dial's plant in September 1994 was ultimately helpful to Dial's position on several disputed items. During the extension period, several items were removed from the assessment, leading to a reduction of nearly $1 million. In short, neither the language of section 422.54(3), nor the record before us, supports Dial's claim that its waivers were invalidated by the department's failure to include an expiration date.

**B. Claimed exemption for machinery and equipment.** Dial claims the department improperly included exempt industrial machinery and equipment in its use tax base. At issue are exemptions claimed for equipment and an electrical substation devoted solely to the production of cardboard case packers for the Lunch Bucket twelve-

pack display cartons. Dial claims that the cardboard case packer is a container within the meaning of Iowa Code section 423.1(12), that is, a container which becomes "an integral part of other tangible personal property intended to be sold ultimately at retail. . . ." The department insists that all of the production activity that occurs after labels and overcaps are placed on individual Lunch Buckets constitutes packaging, rather than processing, and so the material and machines used are not exempt from the use tax.

*1. Applicable law.* Iowa Code section 423.2 imposes an excise tax on the use in Iowa of "tangible personal property purchased for use in this state, at the rate of five percent of the purchase price of the property." Section 423.4(4) provides a use tax exemption for "[t]angible personal property, the gross receipts from the sale of which are exempted from the retail sales tax by the terms of section 422.45." Section 422.45(27)(a) exempts "gross receipts from the sale or rental of industrial machinery [and] equipment," if that equipment is "directly and primarily used in . . . processing tangible personal property. . . ." [3] In the context of use tax, property used in "processing" means

> any tangible personal property including containers which it is intended shall, by means of fabrication, compounding, manufacturing, or germination, become an integral part of other tangible personal property intended to be sold ultimately at retail. . . .

Iowa Code § 423.1(12).

Rule 701–18.29(2) of the Iowa Administrative Code implements these statutes and provides that processing begins "when the 'form, context, or condition' of tangible

---

**3.** This subsection has been amended to allow exemptions for the type of machinery and equipment at issue in this case purchased after July 1, 1997. *See* 1997 Iowa Acts ch. 87, § 1 (codified at Iowa Code § 422.45(27) (1999)).

personal property is changed with the intent of eventually transforming the property into a saleable finished product." Processing does not include storage or transport after the property has been transformed into a finished product. Iowa Admin. Code r. 701–18.29(3). Finally, equipment may be considered an integral part of the production of a product if it is "very closely interconnected with, or [is] an integral part of, the operation of the processing equipment while processing is occurring." *Id.* r. 701–18.29(5). This includes conveyor belts that move parts while the processing is occurring. *Id.* (example).

■ *2. Industrial equipment and machinery: case packer and conveyor systems.* Dial asserts the department improperly assessed $19,743.36 in taxes on case packers and conveyor systems purchased at a cost of $493,584. The equipment is used to place twelve individual Lunch Buckets into a cardboard container. The container is then stacked onto a pallet, shrink wrapped, and sent to retailers who may use the container to display the product at the store. As already noted, Dial claims the cardboard case packers are containers within the meaning of section 423.1(12). The department contends the cardboard case packers are no more than packaging and, therefore, the materials and equipment used in their manufacture are not entitled to the use tax exemption pertinent to containers. The department has the better argument.

It is true, as Dial suggests, that prior decisions interpreting section 423.1 hold that certain packaging materials and equipment may form an integral part of processing goods for sale. For example, in *Zoller Brewing Co. v. State Tax Commission,* 232 Iowa 1104, 1108, 5 N.W.2d 643, 645 (1942), this court held that in the production of beer, "there would be no means for the sale" without the bottles in which to contain the liquid. We applied the same principle to kegs and cartons purchased by the consumer along with the beer. *Zoller,* 232 Iowa at 1108, 5 N.W.2d at 645. By contrast, equipment used to facilitate a sale without changing the product's form, context or condition does not qualify for the use tax exemption. *Hy–Vee Food Stores v. Iowa Dep't of Revenue,* 379 N.W.2d 37, 43 (Iowa Ct.App.1985). Thus, in *Hy–Vee,* scales and automatic baggers were held non-exempt, even though deemed "essential" to the business. *Id.*

The record before us reveals that the ultimate consumer purchases the individual Lunch Buckets, not the case packer. The Lunch Buckets are priced individually for sale, while the cardboard case packer is used by the retailer for display purposes. Thus the case packer may facilitate sales, but it is not an integral part of the property sold ultimately at retail. *See* Iowa Code § 423.1; *Hy–Vee,* 379 N.W.2d at 43. The district court, and the agency before it, correctly denied the use tax exemption for this equipment and materials.

■ *3. Electrical substation.* Dial likewise contends the department incorrectly assessed $8490.50 in taxes for machinery and equipment used to produce usable electricity for the Lunch Bucket line. The substation at issue reduces voltage used by the labeler, overcapper and case packing machines. Thus, Dial argues, the substation is entitled to exemption under the section 422.45(27)(a) as it is used in processing tangible personal property.

As correctly recognized by the agency and the district court, denial of the exemption is compelled by this court's holding in *Heartland Lysine.* There we observed that switching gear and transformers regulating the electricity coming into the plant were "crucial to the plant's success-

ful operation." *Heartland Lysine,* 503 N.W.2d at 591. But, although vital, the electrical equipment's function was deemed "preliminary to the actual processing" and, hence, not subject to the use tax exemption. *Id.*

The same principle applies to the case before us. Although the substation's work is crucial to the functioning of the Lunch Bucket line, it merely serves to lower the voltage of electricity from high-power lines coming into the plant. The substation plays no part in changing the form, context or condition of the Lunch Buckets. Its function is preliminary to processing, not part of it. Dial's contentions to the contrary are without merit.

■ *C. Penalty and interest abatement.* Dial's third claim is that the department erred in failing to abate the assessed penalty and interest because Dial timely paid its taxes and always attempted to comply with Iowa tax law. It contends that the invalid extensions allowed the auditor to drag his feet in finishing the audit, thereby delaying requests for additional information from Dial. The department responds that *Dial* was the one dribbling out information during 1994, 1995 and even into 1996, all for the purpose of convincing the auditor that certain capital assets were not taxable. Because Dial caused the delay, the department argues, the ALJ and district court were correct to deny Dial's claim for penalty and interest abatement.

Iowa Code section 422.58(1) imposes penalty and interest charges in addition to any additional tax assessed against a taxpayer as the result of an audit. Section 421.27(3) sets the penalty at five percent of any deficiencies revealed. The director of the department may waive the penalty if the taxpayer has already paid ninety percent of the taxes ultimately assessed or the taxpayer tenders documented proof that it acted in reliance on written advice from statutorily-authorized sources. Iowa Code § 421.27(3)(a), (b), (d). Dial, however, furnished no evidence that it is entitled to an abatement under any one of these subsections.

A taxpayer must also pay interest from the time the taxes should have been paid. Iowa Code § 422.58(1). The department may waive this interest pursuant to section 421.60(i) if it deems the interest (or penalty) to be erroneous, illegal or excessive. Dial argued before the district court, and urges on appeal, that the interest imposed was excessive because the department took over a year to complete the audit, a result of securing allegedly invalid extensions. The record, however, contains overwhelming proof that Dial contributed to, if not outright caused, these delays. It continued to present additional information to the auditor for almost two years, even after the auditor had issued several audit closing letters. Moreover, as discussed earlier in this opinion, Dial never advised the department that it wished to terminate the extension and demand an immediate assessment. As already noted, this would not have been to Dial's advantage.

In short, Dial has presented no convincing reason supporting the abatement of penalty and interest it seeks. The district court did not err in affirming the agency on this point.

■ *D. Local option tax assessment.* Dial's final claimed error is the district court's affirmance of the department's assessment of $7723.56 for a local option sales tax. Dial claims the retailer, not the purchaser, is obligated to collect the tax. The department contends the local option tax assessments were for those transactions entered into by Dial where delivery occurred in the local option taxing jurisdiction. It points out that under Iowa Code section 422.47(3)(b), made applicable

to local option sales tax by section 422B.9, tax liability rests on both the seller and the purchaser unless the seller, in good faith, takes an exemption certificate making only the purchaser liable.

We are convinced the district court made no error in interpreting the pertinent law and applying it to the facts before us. The auditor testified that, upon reviewing Dial's invoices, he determined that Dial had not paid, and the seller had not collected, the local option sales tax due. Dial was obligated to pay those taxes when the delivery was taken in the local option taxing jurisdiction. Dial presented no evidence to sustain its claim of double taxation. Nor did it contradict the auditor's proof that Dial had not paid the tax to the retailers, therefore the retailers could not have remitted the tax to the department. Substantial evidence in the record supports the district court's judgment in the department's favor.

■ *E. Department's cross-appeal: inclusion of disputed accounts.* The department challenges the district court's reversal of the agency's ruling that two accounts which happened to have no errors in them for the sampled months were nevertheless properly audited and used in determining the tax assessment on expense items. The question is whether Dial agreed to the audit technique used, including the accounts to be reviewed for purposes of determining an error rate applicable to expense item purchases. The district court found the record insufficient to support the agency's finding of an agreement regarding accounts 6453 and 6454. On our review, we conclude the record contains ample support for the agency's decision.

The record reveals that early in June 1993, the department contacted Dial regarding the impending audit. A follow-up letter sent to Dial's tax compliance coordi-

nator included a list of thirty-nine expense accounts that the department intended to review for the audit. Among the list of accounts are the two now in dispute. Account 6453 was an expense account for various chemicals totaling $2.4 million. Account 6454 was an expense account for vinegar purchases totaling $60,000.

Several months later, the department sent Dial an audit procedure agreement which explained how an error rate would be established during the audit "by computing the ratio of errors found in listed accounts to total of listed accounts for the test periods." No accounts were listed on the actual agreement form nor were any attached to the agreement which was later signed by officers at Dial. However, included with the audit procedure agreement was a copy of the June 1993 letter that had listed the thirty-nine expense accounts, as well as copies of all other correspondence between the parties up to that date. At no time prior to the tax assessment did Dial register any misunderstanding about which accounts would be included in the audit sample.

At the conclusion of the audit, Dial's total tax liability was determined to be $228,884.43. As it turned out, no errors had been discovered in accounts 6453 and 6454. Their inclusion in the expense base increased the total assessment, however, by $4341.29. Dial unsuccessfully claimed on its administrative appeal before the agency that, because no errors were found in these accounts, they should not have been included in the sample. The district court reversed the agency on judicial review, reasoning the record contained no proof that an agreement had been reached between Dial and the auditor concerning which particular accounts would be used in the sample. Its ruling rested on the fact that the letter describing the sampling method did not list the specific accounts to

be sampled, nor did the letter contain a specific reference to the earlier letter listing the thirty-nine accounts.

We are convinced that although the inferences drawn by the district court may be supported by substantial evidence, the contrary inferences drawn by the agency are equally well-supported by the record before us. *See Mercy Health Ctr. v. State Health Facilities Council*, 360 N.W.2d 808, 811–12 (Iowa 1985) (evidence substantial if reasonable person would find it adequate to reach given conclusion, even if reviewing court might draw contrary inference). No one from Dial ever indicated to the auditor any misunderstanding about which "listed accounts" were referred to in the signed audit procedure agreement. Dial employees provided the auditor information about all of the accounts listed in the June 1993 letter. Based on the audit procedure agreement, the auditor reasonably believed the accounts he could review for his sample were the ones listed in that letter.

The department points out that Dial's protest rested on the inclusion of error-free accounts in the audit sample, not the alleged misunderstanding relied upon by the district court. Plainly the question of whether an account contained errors for the months sampled has no bearing on whether there was an agreement to include that account in the audit sample. As the department rightly notes, if taxpayers were allowed to object after-the-fact to inclusion of accounts without errors, where would the department draw the line on the audit? Surely taxpayers would complain vehemently if the department used audit samples that included only accounts where mistakes were found to the exclusion of accounts where no mistakes were found. Including accounts with no errors in the sampled months could logically *lessen* an assessment from what it would otherwise

be. As explained by the department's auditor, such inclusion would decrease the error rate while increasing the expense base, resulting in less tax than would result from applying a higher error rate to lower base.

Because there was substantial evidence in the record made before the agency to support its conclusion that Dial understood, and agreed to, the accounts reviewable under the audit, it was error for the district court to draw a contrary factual conclusion. We therefore reverse that portion of the district court's ruling that required the department to delete accounts 6453 and 6454 from its computation of the error rate.

## IV. Conclusion.

The extension agreements signed by the parties were valid and, therefore, the taxing period from January 1, 1989 through March 31, 1991 did not fall outside the pertinent statute of limitations and was properly included in the assessment. The industrial machinery and electrical equipment used by Dial to produce Lunch Buckets does not involve containers integral to the processing of the product and, accordingly, were properly included in the use tax assessment. The record also supports the agency's denial of Dial's claim to an abatement of penalties and interest, and the agency's imposition of local option sales tax. The district court did, however, err in its determination that the record contained no substantial evidence of agreement regarding the inclusion of accounts 6453 and 6454 in the error sample. We therefore affirm the district court on Dial's appeal, reverse on the department's cross-appeal, and remand to the district court for entry of a corrected judgment that affirms the tax assessment in full.

APPEAL AFFIRMED; CROSS AP-
PEAL REVERSED AND REMANDED
WITH INSTRUCTIONS.

SNELL, S.J.,* participates in lieu of
STREIT, J., who takes no part.

* Senior Judge assigned by order pursuant to Iowa Code section 602.9206 (2001).